Randell v. C., R. I. & P. Ry. Co.

EUGENE L. RANDELL, Respondent, v. CHICAGO, ROCK ISLAND AND PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, June 8, 1903.

1. **Passenger Carriers: PAYING FARE: EXPULSION: VARIANCE.** Though a person refusing to pay his fare may be expelled, and a tender of his fare after the expulsion has commenced will not defeat the right to expel him, yet where he has no money and other passengers offer to pay his fare, he becomes a passenger and can not be expelled; and where the petition avers plaintiff was a passenger, evidence showing that, before the expulsion, bystanders tendered the fare, supports the allegation.

2. ———: INTRUDER: ASSAULT AND BATTERY: EXCESSIVE FORCE. A conductor may remove from the train an intruder refusing to pay his fare, provided he uses such force only as is reasonably necessary, but the carrier will be liable for injuries caused by excessive force; and the evidence in the record supports the contention of unreasonable force.

3. ———: ———: ———: ———: JURY QUESTION. The question of excessive force and its willful and wanton character are for the jury, and this whether the party expelled is lawfully a passenger or an intruder.

4. ———: PLEADINGS: EXPULSION: EXCESSIVE FORCE: VARIANCE. A petition for damages resulting from an unlawful expulsion from a passenger train, is examined and its essence is held to be the excessive force and violence used in the expulsion, and whether the party expelled was a passenger or not is wholly immaterial; and the variance, if any, at most should have been taken advantage of in the manner required by the statute.

5. ———: EXPULSION: EVIDENCE: OBJECTION. The objection that evidence is incompetent, irrelevant and immaterial, is insufficient.

6. ———: ———: ASSAULT AND BATTERY: CONTRIBUTORY NEGLIGENCE: INSTRUCTIONS. (Per SMITH, P. J.): Though a passenger conductor can not use more force than is reasonably necessary to accomplish the expulsion of an intruder, yet if the intruder's resistance had a material effect in producing the injuries

complained of, or substantially contributed thereto, he is not entitled to recover for the excess of force; but it is held that defendant's instructions in this case were properly refused, since they were peremptory in their character.

7. ——: ——: ——: —— ——.  (Per SMITH, P. J.): An instruction for plaintiff purporting to cover the whole case and directing a finding for the plaintiff, but omitting a material defense within the scope of the pleadings, is bad.  (Per ELLISON, J., BROADDUS, J., concurring):  But where the charge is an unjustifiable assault and battery, the rule of contributory negligence has no application, and an instruction omitting such defense is not fatal.

8. ——: EXPULSION: ASSAULT AND BATTERY: UNNECESSARY FORCE.  (Per ELLISON, J., BROADDUS, J., concurring):  Where a person on a passenger train is assaulted with unnecessary violence, and is hurt in consequence of reasonable resistance to such violence, the carrier is not thereby relieved of liability for the use of·such unnecessary force.

Appeal from Jackson Circuit Court.—*Hon. J. H. Slover, Judge.*

AFFIRMED.

*W. F. Evans* and *Frank P. Sebree* for appellant.

(1)  The court committed error in refusing the demurrer to the evidence, and also in refusing the peremptory instruction to find for the defendant, requested at the close of all the evidence, for the reasons:   First. Mrs. Randell was a trespasser and unlawfully on the train and the defendant owed her no duty, except not to willfully or wantonly injure her, and there was no evidence of such act of the defendant.   Berry v. Railway, 124 Mo. 223; Farber v. Railway, 116 Mo. 81; Purple v. Railway, 51 U. S. App. 564; Lillis v. Railroad, 64 Mo. 494; 1 Thompson Com. Law of Negligence, secs. 207-8; Railroad v. Swope, 115 Ala. 287; Railway v. Gants, 38 Kan. 608; 3 Elliott on Railroads, sec. 1255; Hutchinson on Carriers, sec. 555.   Second.   Mrs. Randell being a trespasser on the train and it being the right and duty of the conductor to remove her, and as her

injuries were received in the struggle which she invited and during her wrongful resistance to her removal, and as the officer did not willfully or wantonly injure her, she can not recover. Hutchinson on Carriers, sec. 593; 1 Thompson Com. Law Neg., secs. 206, 207, 208; 4 Elliott on Railroads, secs. 1637, 1638; Railway v. Gants, 38 Kan. 608; Hall v. Railway, 15 Fed. 57; Kiley v. Railroad, 189 Ill. 384; Railway v. Shropshire, 101 Ga. 33; Moore v. Railroad, 38 S. C. 1. Third. The action being based on the allegation that plaintiff's wife was a passenger and lawfully upon the train and that her rights as such passenger were violated and abused by defendant, and the evidence proving without contradiction that she was on the train not in the relation of a passenger, but in fraud of defendant's rights and a pronounced trespasser, the plaintiff is precluded from recovering in this action. Logan v. Railroad, 77 Mo. 663; Berry v. Railway, 124 Mo. 223; Feeback v. Railway, 167 Mo. 206. Fourth. The petition alleges that she was lawfully on the train as a passenger and that her injuries were occasioned by an assault and the willful and wanton acts of the conductor; it was necessary for the plaintiff to prove such allegation before he was entitled to recover, and there was no such proof. Miller v. Clark, 78 Mo. App. 447; State v. Boyer, 70 Mo. App. 160; State v. Sears, 86 Mo. 174. Fifth. There was no evidence of any unnecessary or excessive force being used in overcoming her resistance and removing her from the car. Lillis v. Railroad, supra; Railroad v. Olds, 40 Ill. App. 421; Railroad v. Brisbane, 24 Ill. App. 463; Harrison v. Fink, 42 Fed. 787. (2) The instructions purported to cover the whole case and authorized a recovery without reference to Mrs. Randell's resistance and negligence. This defense, which was pleaded and proved, was wholly omitted from all instructions given to the jury. Link v. Westerman, 80 Mo. App. 593; Schaaf v. Fries, 77 Mo. App. 346; May v. Crawford, 150 Mo. 504. (3) It was prejudicial error for the court to admit in evidence the

conversation between the conductor and W. J. Smith. Smith v. Little Pittsburg Co., 75 Mo. App. 177; Lumber Co. v. Krieger, 52 Mo. App. 418.

*Frank P. Walsh* and *John G. Park* for respondent.

(1) The rule of the common law, prevalent throughout the United States and thoroughly established by this court and our Supreme Court is, that a carrier in ejecting a trespasser from his cars must use only such force as is reasonably necessary, and is liable for all injuries caused by excessive force or violence. Tanger v. Railway, 85 Mo. App. 28; Turner v. McCook, 77 Mo. App. 201; Holt v. Railway, 87 Mo. App. 203; Farber v. Railroad, 139 Mo. 272; Perkins v. Railroad, 55 Mo. 201; Hachl v. Railroad, 119 Mo. 325. The rule is firmly established by the courts of England, and the Supreme Court of the United States and of our sister States. Steamboat Co. v. Brockett, 121 U. S. 637; Seymour v. Greenwood, 6 H. & N. 359; Ramsden v. Railroad, 104 Mass. 117; Coleman v. Railroad, 106 Mass. 160; Sanford v. Railroad, 23 N. Y. 343; Rounds v. Railroad, 64 N. Y. 138; Railroad v. Pelletier, 134 Ill. 120. This is the rule announced by text-books of approved authority. 3 Elliott on Railroads, sec. 1255, p. 1963; 4 Ibid., sec. 1637, p. 2575; 1 Thompson's Com. on Neg., sec. 206; 3 Ibid., secs. 3209, 3181, 3253, 3254, 3257, 3304; 2 Am. and Eng. Ency. of Law (2 Ed.), 984-986. (2) Before any force was used, it was necessary that Mrs. Randall should be told civilly, to leave, and that she should refuse. 2 Ency. of Law (2 Ed.), 985, note; Commonwealth v. Clark, 2 Met. (Mass.) 23; State v. Taylor, 82 N. C. 554; State v. Burke, 82 N. C. 553; Green v. Goddard, 2 Salk. 641; Thompson v. Berry, 1 Cranch (C. C.) 45; People v. Van Vechten, 2 N. Y. Crim. 291; Robinson v. Hawkins, 4 T. B. Mon. (Ky.) 134. It was a question for the jury whether excessive force was used or not.

3 Thompson's Com. on Neg., sec. 3257; 2 Ency. of Law (2 Ed.), 985, note; Commonwealth v. Dougherty, 107 Mass. 250; Commonwealth v. Clark, 2 Met. (Mass.) 23; State v. Taylor, 82 N. C. 554. (3) There was no fatal variance in plaintiff's case between the pleading and proof. (a) Mrs. Randall, being on defendant's train, was presumptively a passenger. 2 Fetter on Carriers of Pass., sec. 479; 2 Wood on Railroads (Minor's Ed.), 1218; 4 Elliott on Railroads, par. 1578. (b) The testimony that her ticket was invalid came from defendant, and was only a partial defense, tending to justify her ejection. It was no justification for her ejection in an unlawful manner. Tanger v. Railroad, 85 Mo. App. 28; White v. Railroad, 26 W. Va. 800; Mykleby v. Railway, 39 Minn. 54. (c) The gist of the action was the excessive violence used in the ejection of plaintiff's wife. If such violence was used, then it is immaterial whether Mrs. Randell was a passenger, licensee or trespasser. In either contingency plaintiff might recover. Tanger v. Railroad, 85 Mo. App. 28; Mykleby v. Railroad, 39 Minn. 94. Hence, the variance is utterly immaterial, and not ground for reversal. Prewitt v. Railroad, 134 Mo. 615; Wise v. Railroad, 85 Mo.178; Cash v. Railroad, 81 Mo. App. 109; Hartpence v. Rogers, 143 Mo. 623; Owens v. Railroad, 95 Mo. 181; Anderson v. Railroad, 161 Mo. 411. (d) Defendant waived the claim of variance by failing to file the affidavit of surprisal required by Revised Statutes 1899, section 655. We cite the following decisions of this court: Hayes v. Casualty Co., 72 S. W. 135; Hansberger v. Railroad, 82 Mo. App. 574; Wallich v. Morgan, 39 Mo. App. 469; Brown v. Railroad, 31 Mo. App. 673. (e) Plaintiff and defendant tried the case upon the same theory, viz., that the plaintiff was a trespasser. Hackett v. Underwriters, 79 Mo. App. 16; Pope v. Ramsey, 78 Mo. App. 157; Hazel v. Clark, 89 Mo. App. 78; Lbr. Co. v. Calhoun, 89 Mo. App. 209; Jones v. Habberman, 94 Mo. App. 1; Peck & Co. v. Roofing Co., 70 S. W. 171. (4) The use of excessive

force constituted assault, as alleged. 2 Ency. of Law (2 Ed.), 984, 986; State v. Boyer, 70 Mo. App. 160; Yeager v. Berry, 82 Mo. App. 538; Robertson v. Railroad, 152 Mo. 382; Stern v. St. Louis, 161 Mo. 146. (5) The objection to the conversation between the conductor and W. J. Smith, that it was made after Mrs. Randell was off the train, and no part of the *res gestae* are made now for the first time. The record shows only the general objection, "incompetent, irrelevant and immaterial." This is no objection at all. Creighton v. Mod. Woodmen, 90 Mo. App. 386; Clark v. Loan Co., 46 Mo. App. 248; Guinotte v. Egelhoff, 64 Mo. App. 356; State v. Wright, 134 Mo. 404; Churchman v. Kansas City, 49 Mo. App. 369; Connor v. Black, 119 Mo. 126; Clark v. Conway, 23 Mo., 438; Margrave v. Aasmuss, 51 Mo. 561.

SMITH, P. J.—The petition in substance alleged that while the plaintiff's wife, Mattie E. Randell, was a passenger in a car of one of defendant's trains, that the conductor of that train at the city of Topeka in the State of Kansas, wrongfully, wantonly and without any just reason or excuse, and in violation of the rights of his said wife as a passenger, forcibly and violently committed an assault upon her, and with insult and injury and great unnecessary violence expelled her from the train and threw her upon the ground, in consequence of which she suffered bodily injury to her spine and limbs and great physical injury to her nervous system, etc., etc., whereby he was damaged, etc.

The answer was a general denial coupled with a plea of contributory negligence. There was a trial resulting in a judgment for plaintiff, and defendant appealed.

It appears from the evidence that one Rooney was a passenger conductor in defendant's employ whose run was on that part of the railway between Kansas City and Belleville, Kansas. It further appears that at 11 o'clock on the fifth day of September, 1899, one of de-

fendant's passenger trains from Denver, Colorado, arrived at Belleville station where said Rooney took charge of it in the capacity of conductor, and that he found on that train a lady accompanied by a little boy five or six years old, the former of whom was plaintiff's wife. After the train had left Belleville, Rooney demanded of Mrs. Randell, plaintiff's wife, the production of her ticket; and in response to this demand she produced an excursion ticket from Chicago to Los Angeles and return which had expired by its own limitation the preceding day. Rooney declined to accept the ticket, telling her that it was a "dead ticket;" that she was not entitled to ride on it, and that she must pay her fare or else leave the train. She declined to either pay the required fare or to leave the train, and remained thereon until it reached Topeka where it stopped.

The train was composed of a number of cars in which were riding a large number of passengers of both sexes. In the car in which plaintiff's wife had been riding were about twenty passengers, mostly women. As soon as the train stopped at Topeka, Rooney left the car and shortly afterwards returned with a negro policeman, of the city in which the station was located, who was about six feet tall and weighed about 250 pounds; and as the two approached the place where the plaintiff's wife was sitting, Rooney pointed her out to the officer, repeating his former request that she pay him the fare. This, she refused to do, saying, amongst other things, that she had no money with her; and thereupon the negro policeman caught hold of both her arms near her body and with the assistance of the negro train porter, and over her protests, and amidst the harrowing and distressing screams of herself and child—the latter crying out: "Oh, mama! Turn mama loose! Mama!" while young as he was, he resisted with all his power the action of the two negroes—and the cries of the other women and the curses of the male passengers in the car, he ruthlessly and pitilessly dragged her on her back

along the aisle and out through the door and over the platform and down the steps and into the paved street where he deposited her. At the inception of this pathetic and distressing ordeal through which the plaintiff's wife was fated to pass, a number of passengers applied to the conductor to know if something could not be done to "let this cup pass" from her; if he would not "accept her fare," and he replied; "no, it was too late;" that "she was under arrest for trespassing;" that "she had been bulldozing us all day and now it is out of our hands." The negro policeman in his deposition read at the trial deposed that when he went to remove the plaintiff's wife from the car he heard several of the passengers say to the conductor: "We'll pay her fare to Kansas City." It also further appears that the plaintiff's wife while in the clutches of the two negroes offered all resistance she could to her removal. The uncontradicted testimony of her physicians showed that she received injuries from the manner of the expulsion quite as serious as alleged in the petition. At the conclusion of the plaintiff's evidence the defendant submitted an instruction in the nature of a demurrer thereto and later on, at the conclusion of all the evidence, another, peremptory in its character, both of which were refused. The inference seems to be unavoidable that the plaintiff's wife had ridden on the defendant's Denver train for nearly or quite 500 miles on the ticket which she offered Conductor Rooney, and that it had been accepted for her passage by the other conductors of that train west of Belleville. Rooney finding her without a "live ticket" had the right to demand her fare from Belleville to Kansas City, but whether from Denver to Kansas City may be doubted. But certainly she had no right to passage from Belleville to Kansas City unless she paid the customary fare. But when she refused to pay, as she undoubtedly did, from that moment she was wrongfully on the train; and if she persisted in remaining, the conductor had the right to remove her,

using no more force for that purpose than was reasonably necessary. It is conceded that by the common law this authority was conferred. But with this concession, the rightfulness of the expulsion is still questioned. When the plaintiff's wife declined to pay—for the reason, no doubt, she had no money then available—and when her immediate expulsion was threatened, to avert which the payment of her fare to her destination was offered by others and refused by the conductor, was he, after such offer and refusal, authorized by law to proceed with the threatened expulsion? Was not his lawful right to expel her then abrogated? Was she not in the same situation as if she had paid the fare demanded? Was she not thereafter in legal contemplation rightfully on defendant's train and entitled to passage?·

The law has been held to be that one who persistently refuses to pay fare or produce a ticket can not gain a right to be carried or make his expulsion unlawful by a tender of the fare after the conductor begins to expel him. Elliott on Railroads, sec. 1637, and the numerous authorities there cited in note 4. But it has also been further held that if he has no money, another may pay his fare before he is expelled. And if such other offers to pay his fare before expulsion, the carrier is bound to transport him. He is then in the same situation as if he had borrowed the money of some one near him and tendered it. The conductor would have the same right to refuse to accept money thus borrowed as to refuse the offer made. There can be no difference in principle. Railroad v. Garrett, 8 Lea (Tenn.) 438; Railroad v. Nix, 68 Ga. 572; Clark v. Railroad, 91 N. C. 506; Hoffbauer v. Railway, 52 Iowa 342; Elliott on Railroads, sec. 1637; 3 Am. and Eng. Ry. Cases, 416. It is thus seen that the allegation of the plaintiff's petition that his wife was a passenger on the defendant's train is not without substantial evidence to support it, and that the rule requiring the *allegata* and *probata* to correspond was fairly met. It will not do to say there

was no evidence adduced to support the allegation of the petition that the plaintiff's wife was a passenger, and, therefore, it follows that she was, after the offer was made to pay her fare and its refusal by the conductor, rightfully on the train and her expulsion thereafter was wrongful.

But suppose she was an intruder on the defendant's train and that the conductor was authorized to expel her therefrom, still, in accomplishing such expulsion he was authorized to use only such force as was reasonably necessary, and for all injuries caused by excessive force or violence the defendant was liable.    Tanger v. Railroad, 85 Mo. App. 28; Turner v. McCook, 77 Mo. App. l. c. 201; Holt v. Railway, 87 Mo. App. 203, 210; Farber v. Railroad, 139 Mo. 272, 283; Perkins v. Railroad, 55 Mo. 201; Haehl v. Railroad, 119 Mo. 325; Steamboat Co. v. Brockett, 121 U. S. 637; Seymour v. Greenwood, 6 H. & N. 359; Ramsden v. Railroad, 104 Mass. 117; Coleman v. Railroad, 106 Mass. 160; Sanford v. Railroad, 23 N. Y. 343; Rounds v. Railroad, 64 N. Y. l. c. 138; Chic. City Ry. v. Pelletier, 134 Ill. 120.    The indubitable inference to be deduced from the physical condition in which plaintiff's wife was found after the expulsion is that great force and violence was employed in accomplishing it.    Such physical condition negatives the testimony of the policeman and conductor that they handled her "nicely" and gently.    The negro giant of a policeman with the aid of the negro porter could have picked the plaintiff's wife up and carried her out of the car with entire ease and without inflicting the injuries they did.    The employment of the force and violence they used in expelling her was of such a character as might well excite the commiseration and indignation of the passengers who witnessed it.    Such an exhibition of brutal force was discreditable alike to the city where it happened and to the railway company whose agents instigated it.

When we consider the language of the conductor re-

lating to the offer made to pay him the fare; the means and manner employed in effecting the expulsion, together with all the attending circumstances, as well as the physical injuries resulting, it is hard to resist the conclusion that the force employed was not only excessive, but wanton and willful. And whether or not the defendant used excessive force in expelling plaintiff's wife, whether willful and wanton, was under the plaintiff's evidence and under all the evidence a question for the jury and not for the court. 3 Thompson's Com. on Neg. sec. 3257; 2 Ency. of Law (2 Ed.), 985, note; Commonwealth v. Dougherty, 107 Mass. 250; Commonwealth v. Clark, 2 Met. (Mass.) 23, 25; State v. Taylor, 82 N. C. 554. Although defendant's action in expelling plaintiff's wife may have been justifiable, yet, if excessive force and violence were employed in effecting it, then the expulsion thereby became unlawful and for which there was liability. We can find no fault with the action of the court in refusing the two instructions heretofore alluded to.

The theory upon which both parties by their instructions requested the submission of the case to the jury was that the plaintiff's wife was a trespasser. If the defendant used unnecessary and excessive force in effecting the expulsion whereby the injuries complained of were inflicted, it would be unimportant whether she was a passenger or a trespasser. The defendant would have no right to employ excessive force in her expulsion, whether such expulsion was rightful or wrongful. Suppose the petition did allege that she was a passenger, and therefore rightfully on defendant's train, and the proof should show that she was not a passenger but an intruder, the defendant would be liable if in effecting the expulsion unnecessary force and violence was used resulting in her injury. The essence of the complaint was the excessive force and violence used in the expulsion. The variance was wholly immaterial—*utile per inutile non vitiatur*. But if there was a variance it is not avail-

able to defendant as a ground of reversal since it did not take advantage of it in the manner required by the statute. Hansberger v. Railway, 82 Mo. App. l. c. 574, and cases there cited.

The defendant objected in the court below to testimony relative to certain conversation between the witness Smith and the conductor which took place after the expulsion, on the ground that it was "incompetent, irrelevant and immaterial." No ground of objection was stated. Clark v. Loan Co., 46 Mo. App. 248; Creighton v. Mod. Woodmen, 90 Mo. App. l. c. 386.

The defendant complains that the court refused its instruction submitting its defense of contributory negligence. If the plaintiff's wife was unlawfully on defendant's train, it was her duty, when requested by the conductor, to leave it at the first suitable opportunity that was afforded her, and if she refused to so leave then the conductor was authorized to remove her, using only such force as was necessary for that purpose. Holt v. Railway, 174 Mo. 624. But if she resisted, and it became necessary to use more force than would have been necessary but for such resistance, and if her injuries were received in the struggle while resisting, there would be no liability, unless they were willfully or wantonly inflicted. And while a railway conductor in the exercise of his police powers and disciplinary control over his train may use such force as is necessary to overcome the resistance of a recusant intruder, yet, if he employ such unnecessary force so as to maltreat the resisting intruder in ill temper or hostility, or if the excessive force used by him is shown to have been wanton or malicious, the railway company is liable. But if the recusant plaintiff's negligence or wrongful act had a material effect in producing the injury, or substantially contributed towards it, then he is not entitled to recover. This seems to be the result of the authorities. Hutchison on Carriers, sec. 593; 1 Thompson Com. Law Neg., secs. 206, 207,

208; 4 Elliott on Railroads, secs. 1637, 1638; Railway v. Gants, 38 Kans. 608; Hall v. Railway, 15 Fed. 57; Kiley v. Railroad, 189 Ill. 384; Railway v. Shropshire, 101 Geo. 33; Moore v. Railroad, 38 S. C. 1.    But the difficulty with the defendant's complaint is that it requested no instruction submitting the defense of contributory negligence to the jury.    Its fifth, sixth, seventh, eighth, and ninth assumed controverted facts and left nothing to the jury to find.    These instructions were all peremptory in their character.    They told the jury what the facts were and what conclusion they should draw from such facts.

The plaintiff's instructions purport to cover the whole case, but omit any reference to the defendant's defense of contributory negligence.    The rule is that an instruction which purports to cover the whole case and which directs a finding must not omit any material defense within the scope of the pleadings and evidence. Clark v. Hammerle, 27 Mo. 55; Fitzgerald v. Hayward, 50 Mo. 516; Griffith v. Conway, 45 Mo. App. 574; Voegeli v. Granite Co., 49 Mo. App. 643; Shewalter v. Railway, 84 Mo. App. l. c. 601.    Nor was this omission supplied by any instruction given for defendant.

But my associates are of the opinion that under the facts of the case disclosed by the evidence, the defendant was not entitled to a submission to the jury of the issue of contributory negligence, and that the plaintiff's said instruction ignoring that defense was proper; and accordingly it results that the judgment must be affirmed.

## SEPARATE OPINION.

ELLISON, J.—I am of the opinion that the judgment ought not to be reversed on account of the failure of plaintiff's first instruction to exclude the question of the injury happening by reason of Mrs. Randell's contributory negligence, or of her resistance.    The plaintiff's action is based on an unjustifiable assault and bat-

tery. In such cases the rule of contributory negligence has no application. Gray v. McDonald, 104 Mo. 303, citing Beach on Contrib. Negl., secs. 64 and 65, the text of which is fully supported in Chicago Ry. Co. v.——, 118 Ind. 221; Stenmetz v. Kelly, 72 Ind. 442; Renter v. Foy, 46 Iowa 132; Kain v. Larkin, 56 Hun 79; Railroad v. Speer, 156 Ill. 244; Railroad v. Newman, 94 Ga. 560.

2. Neither was it necessary to include the hypothesis of her resistance. While the law 'is that a carrier may expel a passenger who refuses to pay fare, yet, as is abundantly demonstrated by the authorities in plaintiff's brief, there must be no unnecessary force or means employed. When violent and unnecessary force is used the carrier becomes the wrong-doer and it is not for him when brought to the bar of justice, to say that if the passenger had not resisted my unwarranted and unnecessary force I would not have hurt him as badly as I did. In this case the defendant had honored Mrs. Randell's ticket from Denver, Colorado, to Belleville, Kansas, a distance of nearly five hundred miles. At the latter place there was a change of conductors, the conductor who figures in this controversy taking charge at eleven o'clock, a. m. Just after leaving Belleville, when he approached Mrs. Randell for the first time, he found that the time limit of her ticket to Kansas City had expired the day before. He took it into his possession and kept it, but refused to accept it and told her she must pay fare. Within a short distance he spoke to her twice more and said she must pay her fare or get off. He then said nothing further to her and carried her, perhaps, a hundred miles further on, when, on arriving at Topeka, not far from her destination, without notifying her of his intention to do so, he procured the service of a negro policeman of extraordinary stature and strength, in uniform armed with a club, and directed him to eject her from the train. A crowd of people had followed the policeman into the car. The negro officer proceeded to eject her by seizing her under the arms or around the

waist and dragging her backwards, her heels on the floor, down the aisle of the car and down the car steps onto the brick platform of the station where he left her in a sitting posture with her hat off, her hair hanging down and her clothes disarranged. He terrified her and her little boy. Both cried and screamed. His conduct aroused the indignation of the other passengers. He said in testimony that they were much excited; that "the women were bawling, men were swearing and making threats and she was crying and screaming," and that some of the men offered to pay her fare.

There was not the slightest excuse for calling in the policeman; and when called in there was nothing to justify his dragging her backwards out of the car and down the steps, inflicting serious injuries upon her. It was an act of unnecessary violence and an outrage without excuse. In such case the answer of *mollitur manus imposuit*, is no defense. Gregory v. Hill, 8 T. R. 299. If she had been some desperado, armed and defiant there would have been reason in calling upon armed officers of the law for assistance, but being a mere woman, she could easily have been removed without violence or injury by the conductor himself, at least with the aid of his assistants. His failure to do anything himself or to have his assistants do anything, and his taking her by ten or twelve stations where he might have put her off, leads irresistibly to the conclusion that his desire was to terrorize her as he succeeded in doing. He and the policeman became guilty of an unjustifiable assault and battery. And though it be conceded that Mrs. Randell's resistance caused her to be hurt more than she would have been had she remained passive and suffered herself to be led from the train, yet, if a person is unjustifiably assaulted by another and is hurt in consequence of a reasonable resistance to such assault, the fact of such resistance ought not to relieve the wrongdoer. His act is the proximate cause of the injury. If one is set upon by another and struck in the face and in consequence of

his resisting such battery he is then knocked down and injured, it ought not to be said that if he had remained passive and not resisted he would not have been hurt. In this connection see Yeager v. Berry, 82 Mo. App. 534; and Tanger v. Railroad, 85 Mo. App. 28.

The judgment should be affirmed. *Broaddus, J.,* concurs.