MRS. RICE SMITH, Respondent, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, December 2, 1907.

1. PASSENGER CARRIERS: Excessive Damages: Evidence: Conductor's Duty. A conductor should treat passengers with civility and especially unattended lady passengers; and evidence of a conductor's treatment of a lady passenger is reviewed and held entirely insufficient to support a claim for exemplary damages.

2. ———: Insufficient Stop: Alighting Passenger: Measure of Damages: Excessive Verdict. The defendant carrier made an insufficient stop for the plaintiff to alight at her station and she was carried to the next station, a distance of three miles. Thence she returned on foot to her home without any special injury, though there was a lighted depot as well as other means of conveyance to her home. Held, the measure of damages was the loss of time and the labor and cost of a reasonable method of returning home, and a verdict for one hundred dollars is adjudged excessive.

Appeal from Jasper Circuit Court.—*Hon. Hugh Dabbs,* Judge.

Affirmed, *si.*

*L. F. Parker* and *Woodruff & Mann* for appellant.

An award by a jury of one hundred dollars as compensation to a passenger for being carried three miles beyond her destination and for the actual inconvenience, loss of time and labor of returning said three miles is excessive. Such award is so excessive as to show that the jury were actuated by bias, passion and prejudice against defendant, and said verdict is not supported by the evidence, there having been no proof of any actual damage. Trigg v. Railroad, 74 Mo. 147; Marshall v. Railroad, 78 Mo. 610; Rawlings v. Railroad, 97 Mo. App. 515; Snyder v. Railroad, 85 Mo. App. 495; Strange v. Railroad, 61 Mo. App. 587; Railroad v. Scurr, 6 A. & E. R. R. Cases (O. S.) 341; Railroad v. Statham, 42 Miss. 607; Thompson v. Railroad, 50 Miss. 315; Francis v. Transfer Co., 5 Mo. App. 7; Railroad v. Gill, 66 Miss. 39; Railroad v. Bryant, 12 A. & E. R. R. Cas. (N S.) 159; Dorrah v. Railroad, 30 A. & E. R. R. Cas. (O. S.) 576; Judice v. Railroad, 47 La. Ann. 255; Railroad v. Cleveland, 33 S. W. 687; Blackburn v. Railroad, 143 Ala. 346, 39 So. 345; Railroad v. Peacock, 48 Ill. 254; Railroad v. Parks, 18 Ill. 460.

*H. L. Shannon* for respondent.

(1) Where a passenger has been carried beyond his station, it is even the duty of the carrier to back its train to the station, if requested so to do. Winkler v. Railroad, 21 Mo. App. 99; Harlan v. Railroad, 94 S. W. 737; Cullar v. Railroad, 84 Mo. App. 340; Deming v. Railroad, 80 Mo. App. 152. (2) Where a passenger is wilfully carried beyond his station he is entitled to exemplary damages. Harlan v. Railroad, 94 S. W. 737.

(3)   Under the other admitted facts of the case defendant wantonly and wilfully carried plaintiff to Webb City, without just cause or excuse.   In this view of the case the damages are not only not excessive, but exceedingly moderate.   McNamara v. Transit Co., 182 Mo. 676; Deming v. Railroad, 80 Mo. App. 152.

JOHNSON, J.—The cause of action alleged in the petition is founded on the negligent failure of defendant, a common carrier, to afford plaintiff, a passenger on one of its trains, a reasonable opportunity to leave the train at her destination, in consequence of which she was carried beyond her station and compelled to walk home.   The wrongful act is claimed to have been aggravated by insulting conduct on the part of the conductor and the prayer of the petition is for the recovery of exemplary as well as compensatory damages, but the learned trial judge ruled, in the instructions, that none of the facts disclosed presented a case for the assessment of punitive damages.

Defendant, in effect, conceded it had been guilty of a technical breach of its contract with plaintiff in carrying her beyond her station and first took the position that under the facts most favorable to her contention, she was entitled to nominal damages only.   An instruction to this effect was asked but was refused, whereupon the defendant asked and the court gave the following instruction on the measure of damages:

"If the jury find the issues for the plaintiff, in assessing her damages, they will allow her only such sum as will reasonably compensate her for the actual inconvenience, loss of time and labor, of returning from Webb City to Orinogo, not exceeding the sum of five hundred dollars and you should not allow her any sum for anxiety or for mental suffering or exposure."

Thus instructed, the jury returned a verdict for

plaintiff in the sum of one hundred dollars. Defendant, after ineffectually moving for a new trial, brought the case here by appeal and presents but one question for our determination, viz., that the verdict is so clearly excessive we should pronounce it to be the result of passion or prejudice on the part of the jury. Plaintiff answers this contention by saying, in effect, that since the facts and circumstances in evidence justify the conclusion that the wrongful act of defendant in failing to perform its contract with plaintiff was accompanied by insult, the jury rightly included smart money in its verdict, though in so doing, it disobeyed the court's instructions.

The pertinent facts which afford grounds for these diverse positions are as follows: On August 20, 1905, plaintiff, who lived in Orinogo, became a passenger on a Sunday excursion train run by defendant, which consisted of an engine and seven coaches. Her ticket entitled her to ride on this train from Orinogo to Eureka Springs, Arkansas, and return. On the return trip, the train arrived at Orinogo at about 11:45 p. m. and was stopped at the station at a point where the forward coach stood immediately south of the south end of the platform (the track passes through the town from north to south), the next three coaches at the platform and the three remaining coaches to the north of it. Plaintiff, in company with there other women and two children, rode in the rear coach. The train remained stationary a sufficient time for, perhaps, seventy-five passengers to leave it. Plaintiff and her companions knew they had reached their destination and, observing the cars were too crowded for them to go forward to a coach adjacent to the platform, proceeded to the rear end of the last coach for the purpose of alighting. The station and platform were on the west side of the track and the only reason given by plaintiff, who appears to have directed the movements of her party, for not alighting on that

side of the train, was that the ground was lower there than on the other side and they would be inconvenienced in making the long step required to reach it. It is not shown that the step could not have been made in safety or without much inconvenience, nor that they would not have had an open and safe pathway over which to travel in reaching the platform. They chose, however, to alight on the east side where it was quite dark and the gravel was wet and soft and sloped downward in a way to make their footing precarious. Becoming confused and fearful that they were not in a place of safety, plaintiff proposed to her companions to reboard the car and to require the conductor to let them off at the platform. They acted on this suggestion and, after the train started forward and as they were passing the station, they encountered the conductor. The conversation which ensued thus is stated by plaintiff: "The conductor, just as I put my hand on the knob of the opposite coach to see if I could get the door open and see someone, he came in and I says, 'This is where we stop, please let us off.' And he spoke very rough and says, 'Why didn't you get off when the train stopped?' And he says 'You will just have to go on to Webb City. I will not stop the train.' " When they arrived at Webb City, plaintiff, so she states, said to the conductor, " 'How are we to get back from here?' and he says 'Go to the depot and wait for the next train back.' And I says 'Will we have to pay our fare back?' And he says, 'No, just tell the conductor you were carried past your station.' "

Webb City is three miles from Orinogo, a station is maintained there and on that night it was open and lighted. Plaintiff and her party might have waited there for the first train bound for Orinogo which was due in about four hours. They might have stayed at a hotel all night or might have hired a conveyance at a livery stable to take them home. Two of the women followed the latter course and were driven home in a hack. It

is not shown that plaintiff was without money to pay hotel bills or livery hire but rather than wait four hours in the station at night, or incur any expense, she and her remaining companions walked back. A good road, pleasant weather and moonlight enabled them to reach home in about an hour and a half without physical injury and, obviously, without great inconvenience.

No other witness supports plaintiff in her assertion that the conductor spoke rudely when he asked why she did not get off when the train stopped. One of the women testified, without contradiction, that after they had alighted from the coach at Orinogo, plaintiff, in explanation of her proposal that they re-enter the car, remarked "We have paid for our tickets and we will ride to the depot."

We could answer the point made by plaintiff that the trial court erred in refusing permission to the jury to assess punitive damages by saying that since plaintiff did not appeal she is in no position to complain of any error committed against her. Further, we might say that had the evidence disclosed that the conductor had aggravated his wrong by insulting conduct, nevertheless the jury had no right, in plain disregard of the instructions given by the court to wield the rod of correction. But we prefer to dispose of plaintiff's argument on the ground that no facts and circumstances appear in evidence to sustain the charge of improper conduct of a character to warrant the assessment of other than actual damages. In Trigg v. Railway, 74 Mo. 147, the plaintiff testified when the conductor told her he could not take her back, she thought he "spoke very sharp." The Supreme Court held this to be no evidence of malice, insult or violence. What was there said applies very pertinently to the facts of the case in hand: "But, taking this statement in connection with the subject of conversation and what he actually said, and viewing it also in the light of his subsequent language and conduct, we

take it to mean only that the conductor was very positive—and as the action which the plaintiff proposed was such as involved, perhaps, not only her own safety, but the safety of all the passengers on the train, it was a matter about which he probably expressed himself with emphasis. Every passenger, and especially ladies unattended by an escort, have a right to expect and receive ordinary civility from all the servants of a railroad company with whom they are necessarily brought in contact, and if there is any deviation from this standard, it should be on the side of courtesy; and if we were of opinion in this case, that the language or manner of the conductor, connected with the negligence complained of, bordered upon indignity or insult, we would not hesitate to let the verdict stand."

What was said in the present case, taken in conjunction with all the circumstances, shows that the conductor acted with civility and consideration in a trying situation. Plaintiff and her companions were the only passengers of all who desired to leave the train at Orinogo who acted on what she conceived to be the technical right of a passenger to have the coach in which he was riding stopped at the station platform. Their purpose to insist on the satisfaction of this supposed right remained undisclosed until after the train had started and gained some headway. It would have been natural for the conductor to feel irritated and to speak somewhat brusquely, but that he did this, or exhibited any intention of insulting plaintiff or of treating her with incivility is clearly an afterthought, manifestly born of a desire to enhance the recoverable damages. Moreover, it appears that plaintiff was the only person really guilty of rudeness, either at the time of the occurrence in question, or subsequently thereto. She admits that when the conductor asked her why she did not get off when the train stopped, she told him "We didn't have legs as long as bean poles so as to step off

on the west side and on the east side we could not stand." And while on the witness stand, she gratuitously and intemperately berated the conductor in this wise: "Q. Do you know the conductor that was on that train? A. I don't know his name. I know he was one of the most contemptible men I ever saw. Q. Do you know Frank Hart? Mr. Hart, stand up. (Mr. Hart stands up.) This is the young man that was on that train, the conductor? A. Yes, I never have liked him. I know his face." Such outbursts were evidently designed to bolster up a weak position with a semblance of outraged feminine sensibilities. The learned trial judge rightly held the evidence to be insufficient to support the charge of insult added to injury.

Adopting, as we should, the theory on which the case was tried by the parties, that defendant was at fault in not stopping its train at a place where plaintiff could depart therefrom in safety, the remaining questions for our consideration relate to the elements of the compensatory damages a plaintiff is entitled to recover in such cases. The instruction given by the court at the instance of defendant correctly declared the law. In the absence of physical injury as one of the results of the wrongful act or of evidence that the injury was accompanied by circumstances of malice, insult or inhumanity, the only damages plaintiff should recover were those resulting from the actual inconvenience, loss of time and labor she experienced in returning from Webb City to her home. Again we refer to the case of Trigg v. Railway, for a statement of the principles applicable.

"Neither the anxiety and suspense of mind suffered by the plaintiff in consequence of the delay, nor the effect upon her health, nor the danger to which she was exposed in consequence of the train being stopped an insufficient length of time, were proper elements of damage in this case, as no personal injury was received

by the plaintiff and no circumstances of aggravation attended the wrongful act complained of. If the anxiety and suspense of mind suffered by the plaintiff in consequence of the delay in this case is a ground of recovery, similar suspense and anxiety of mind would be an equally good ground of recovery in a case where a railroad train should wrongfully stop to take on a passenger. The general rule is that pain of mind, when connected with bodily injury, is the subject of damages; but it must be so connected in order to be included in the estimate, unless the injury is accompanied by circumstances of malice, insult or inhumanity. . . . If anxiety and suspense of mind are not a ground of recovery here, of course the effects are not." [Marshall v. Railroad, 78 Mo. 610; Rawlings v. Railroad, 97 Mo. App. 515; Snyder v. Railroad, 85 Mo. App. 495; Strange v. Railway, 61 Mo. App. 587; Francis v. Transfer Co., 5 Mo. App. 7; Railroad v. Gill, 5 So. 393; Judice v. Railroad, 16 So. 816; Railroad v. Cleveland, 33 S. W. 687; Blackburn v. Railway, 143 Ala. 346; 39 So. 345; Railroad v. Peacock, 48 Ill. 354; Railroad v. Parks, 18 Ill. 460.] And, further, within the limits defined in the instruction, if plaintiff's actual damages were increased by the course she selected in returning home, she should not be compensated for inconvenience, loss of time and labor beyond that which would have been suffered had she pursued a more reasonable method. She was under no compulsion to travel afoot, but could and should have followed the example of her more sensible comrades and hired a conveyance to take her home. Had she done this, her actual damages could not have exceeded the sum expended in livery hire. Here again she appears, without excuse, to have adopted the course best suited to aggravate her damages and to appeal to the sympathy of the jury. It goes without saying, it was her plain duty to do all she reasonably could do to minimize her damages and if she voluntarily and un-

necessarily selected the most arduous course, it is but just that she should have her added labor for her pains. Ten dollars will fully compensate her, and the verdict in so far as it exceeds that amount is clearly excessive and wholly unsupported by any evidence. We shall give her an opportunity by entering a remittitur to avoid another trial of the cause and, accordingly, we affirm the judgment on condition that within ten days from the filing of this opinion a remittitur of ninety dollars be entered. It is so ordered. All concur.