EDITH N. CRUTCHER, Respondent, v. THE BIG FOUR, Appellant.

Kansas City Court of Appeals, June 8, 1908.

1. **PASSENGER CARRIERS: Misdirecting Passenger: Ejectment: Conductor's Conduct: Evidence.** That the carrier's servant negligently misdirected the passenger to enter the wrong train does not entitle the passenger to free transportation; and the conductor may put him off unless he pays his fare, but he can use no abusive or insulting language or any unnecessary force; and the evidence is held insufficient to show misconduct on the part of the conductor.

2. ———: ———: ———: **Damages: Physical Injury: Nervous Excitement.** There can be no recovery for fright, nervous excitement, etc., unless accompanied by some physical injury, nor for physical injury caused solely by mental distress, since merely negligent persons are not bound to anticipate fright and its consequences.

Appeal from Jackson Circuit Court.—*Hon. Walter A. Powell*, Judge.

REVERSED.

*Marley & Swearingen* for appellant.

(1)    It was the duty of plaintiff to either pay her fare or leave the train.    Woods v. Railroad, 48 Mo. App. 125; Turner v. McCook, 77 Mo. App. 196; Boling v. Railroad, 189 Mo. 219; N. Y. L. E. & W. v. Bennett, 1 C. C. A. (U. S.) 549, 50 Fed. 496; Railroad v. Daniels, 90 Ill. App. 454; Brown v. Railroad (Mich.), 96 N. W. 925; Railroad v. Griffin, 68 Ill. 490; Peabody v. Railroad, 21 Ore. 121; 12 L. R. A. 823; Poulin v. Railroad, 3 C. C. A. 23; Maxson v. Penna. Co., 97 N. Y. 962; Frederick v. Railroad, 37 Mich. 342; Hufford v. Railroad, 53 Mich. 118.    (2)    When plaintiff refused to pay her fare she technically became a trespasser to whom the company owed only proper care and civility until her removal could be effected.    Woods v. Railroad, 48 Mo. App. 125; Randall v. Railroad, 102 Mo. App. 349; N. Y. L. E. & W. v. Bennett, 1 U. S. C. C. A. 549; Edwards v. Railroad, 81 Mich. 364; Frederick v. Railroad, 37 Mich. 42; Hufford v. Railroad, 53 Mich. 118; Mosher v. Railroad, 127 U. S. 390; Baylan v. Railroad, 132 U. S. 146.    (3)    A railroad company is not liable for mere rudeness of its conductor, nor for brusqueness of manner in the discharge of his duty.    Railroad v. Bennett, 1 U. S. C. C. A. 544; Rose v. Railroad, 106 N. C. 168; Daniels v. Railroad, 62 S. C. 16 L. C.    (4) But would be for abusive language amounting to a slander.    Malecek v. Railroad, 57 Mo. 17; McGinnis v. Railroad, 21 Mo. App. 399; Cole v. Railroad, 102 Ga. 474; Grayson v. Transit Co., 100 Mo. App. 72; Connell v. Tel. Co., 116 Mo. l. c. 46-7.    (5) There was no evidence of any insult being offered to plaintiff by defendant's conductor.    Chaffin v. Lynch, 83 Va. 116.    (6)    Unless

there was physical or bodily injury or slander—mental anguish, distress of mind or fright affords no ground for action.    Connell v. Tel. Co., 116 Mo. 41; Trigg v. Railroad, 74 Mo. 147; Grayson v. Transit Co., 100 Mo. App. 72; Deming v. Railroad, 80 Mo. App. 158; Strange v. Railroad, 61 Mo. App. 592; Barnett v. Railroad, 75 Mo. App. 446; Brown v. Craven, 175 Ill. 401; Mitchell v. Railroad, 151 N. Y. 107; Nelson v. Crawford, 122 Mich. 466; Chicago v. McLean, 133 Ill. 40; I. & S. L. Co. v. Stables, 62 Ill. 313.    (7)  It has been held that damages for a nervous shock or mental injury caused by fright at an impending collision are too remote.  So, for a greater reason are damages for nervous shock caused by a threatened performance of a duty.    Shade v. Railroad, 168 Mass. 287; White v. Sander, 168 Mass. 296; Ewing v. Railroad, 147 Pa. St. 40; Victorian Commrs. v. Coultas, 13 App. Cas. 222; Mitchell v. Railroad, 151 N. Y. 107; Haile v. Railroad, 60 Fed. 557; Canning v. Williamstown, 1 Cush. 451.

*Aleshire, Herrick & Gundlach,* for respondent, filed argument.

JOHNSON, J.—This is a suit brought against the Vandalia Railroad Company, the Cleveland, Cincinnati, Chicago & St. Louis Railroad Company (called by the witnesses the "Big Four") and the Terminal Railroad Association of St. Louis.   The first two companies are competing carriers between St. Louis and Indianapolis. The Terminal Association operates the Union Passenger station at St. Louis.   Plaintiff alleges, and her evidence tends to prove, that on May 11, 1906, she purchased a first-class ticket at the Union Station for transportation over the Vandalia line from St. Louis to Indianapolis and proceeded to board a passenger train scheduled to depart at 11:35 p. m.   She presented her ticket to the gateman who erroneously directed her to

a "Big Four" train due to leave at 11:25. A brakeman stationed at the entrance to the car she approached examined her ticket and told her to enter. Later, he passed through the car and, at the request of plaintiff, again inspected the ticket and assured her that she was on the right train. After the train had started and had run perhaps five miles, the conductor called for plaintiff's ticket and, discovering that it was issued by the Vandalia Company refused to accept it. Pursuant to his demand, which plaintiff says was made in an offensive and insulting manner, she paid the fare to Indianapolis in money and was given a receipt therefor. A week later, the Vandalia Company redeemed the ticket, returning to plaintiff the full amount paid for it. Further, it appears that plaintiff was of a nervous temperament and that she became so frightened and excited over her encounter with the conductor and over the fact that she was on the wrong train that she sustained a severe nervous shock which resulted in a menstrual hemorrhage followed by a train of nervous disorders, the nature and extent of which we do not find it necessary to state.

The cause of action pleaded in the petition embraces the negligence of the gateman and brakeman whereby plaintiff was induced to board the wrong train, and the insulting conduct of the conductor. The prayer is for both actual and exemplary damages. Before the trial, plaintiff voluntarily dismissed both the Vandalia and Terminal companies from the action and proceeded against the remaining defendant. The court overruled the demurrer to the evidence offered by defendant and in the instructions given the jury at the request of plaintiff submitted the question of whether she was injured either by the misdirection of the brakeman or by the insulting behavior of the conductor, and authorized the infliction of punitive damages. Verdict and judg-

ment were for plaintiff in the sum of $900 actual dam-
ages, and defendant appealed.

It is not contended that plaintiff sustained any
physical injury except that which she says resulted from
fright or excitement.    Referring to the conduct of the
conductor, plaintiff testified:    "When he came to me
I handed him my ticket and he looked at it and looked
at me real hard and said, 'You are on the wrong train.'
And I said, 'I couldn't be; your brakeman has showed
me this train twice and told me to get on.'   And he
said 'My brakeman couldn't do such a thing.    He
wouldn't dare do such a thing.'    And I said 'Well, he
did.'    And then he said, 'What kind of a looking fellow
is my brakeman?'    I told him and described him.   .   .
. After I told him two or three times what the brake-
man did, he went out and brought the brakeman back
from the back of the car and by that time everybody in
the car was listening and his brakeman said, 'Yes, I
acknowledge that I looked at her ticket twice, but I
was thinking of something else.'    And I said, 'If you
had not been holding that girl's hand you would have
attended to your own business.  He says, 'I only saw
"from St. Louis to Indianapolis" and was thinking about
something else.'   .  .  .    Well I asked him (the con-
ductor) what I was going to do, and he said 'Do?  Why
you pay fare your fare or I will put you off at the next
station;' and I got so nervous I didn't know what to do.
.  .  .   I asked him if he couldn't take the ticket and
cash it in at the other end of the line; he said no, he
couldn't; I would have to pay my fare or he would put
me off.    I said I have only money enough to get to
Hamilton, Ohio.    'Well,' he says, and put his hand up
to ring the bell, 'I will put you off.'   .  .  .   He was
very cross and insulting and informed me he could not
run both ends of the line."    Further, plaintiff states
that during this colloquy, the conductor stood in the
aisle with one hand on the back of her seat and the

other resting on the back of the seat in front of her and that he spoke in a cross and peremptory manner. The other eye witnesses of the occurrence contradict plaintiff, saying that the conductor was courteous to her; that neither he nor plaintiff appeared to be excited or irritated; that the brakeman promptly acknowledged his error and that the conductor did not threaten to eject plaintiff but explained to her his reason for refusing to permit her to ride on a ticket not issued by his company.

For present purposes, we shall accept plaintiff's version of the affair as true and reject that of the other witnesses but, after giving due weight to everything said by her and to every reasonable inference in her favor to be drawn therefrom, we find ourselves unable to adopt the conclusion of the learned trial judge that there was anything in the language or demeanor of the conductor indicative of malice, insult, wantonness or inhumanity, or anything to give offense to a normally sensitive person.    Plaintiff is somewhat free in her use of denunciatory words such as "rude," "cross," "insulting," etc., but such characterizations have little, if any, probative value and we must look to what was said and done, to all the facts and circumstances of the situation disclosed by her testimony, to determine whether a reasonable person might have room to believe that in what he said or did the conductor transgressed the limits of propriety.    The fact that defendant's servant, the brakeman, had negligently directed plaintiff to enter the car for the purpose of becoming a passenger, while it would afford plaintiff a cause of action for any damages sustained as a direct result of such negligence, did not entitle her to free transportation by defendant to her destination.    The conductor was acting according to his right and duty to his employer when he refused to accept a ticket issued by another carrier and demanded payment of fare, and

had plaintiff refused to pay, he would have been justified in ejecting her from the train.    [Woods v. Railroad, 48 Mo. App. 125; Turner v. McCook, 77 Mo. App. 196; Boling v. Railroad, 189 Mo. 219; Randell v. Railroad, 102 Mo. App. 349.]    In his discussion of the subject with plaintiff, it was the duty of the conductor to treat her with respect and ordinary civility, regardless of the question of whether or not he was right in his position. In no event would he have been justified in using abusive or insulting language or in employing unnecessary force to obtain compliance with his demands, but the mere fact that to plaintiff he appeared to be brusque and peremptory did not, of itself, bespeak malice, insult, or an intent to humiliate her before the other passengers. Considerable latitude must be allowed for a reasonble difference of opinion as to what constitutes ordinary civility in a given situation, and in order to condemn his conduct, it should appear that his language and demeanor were unnecessarily harsh and severe; in fact, too excessive to meet the requirements of ordinary business intercourse.    Certainly, it was within the bounds of propriety for him to tell her that she must pay her fare or leave the train and when she demurred, to indicate by his gesture towards the bell rope that he intended to stop the train and put her off.    Beyond this, he did not threaten her, nor offer to touch her, and we look in vain for any language conveying abuse or insult.    Much stress is laid on the assertion, "My brakeman could not do such a thing, he would not dare do such a thing."    This was no imputation that plaintiff had uttered a falsehood, but merely an expression of the opinion that she must be mistaken, and did not understand the brakeman aright.    It is beyond reasonable belief that she might have been injured in the estimation of the passengers by this expression, especially in view of the fact that the conductor immediately summoned the brakeman who fully justified plaintiff

and made it clear that she was the victim of his negligent mistake.

What was said by the Supreme Court in Trigg v. Railway, 74 Mo. 147, and by us recently in Smith v. Railway, 106 S. W. 108, 127 Mo. App. 53, is pertinent to the facts under consideration and the principles followed in these cases compel us to say that the charge of improper conduct on the part of the conductor is wholly unsupported by proof and, therefore, will not sustain a demand for either actual or exemplary damages. If plaintiff became excited and nervous to an injurious extent over her conversation with the conductor, he being without fault, the unfortunate consequences must be attributed to abnormal sensitiveness or nervous derangement which unfitted her for traveling alone.

Further, we find the evidence will not support a cause of action predicated on the negligence of the brakeman in misdirecting plaintiff. She was not delayed in her journey, incurred no pecuniary loss and suffered no other inconvenience than the annoyance of being made the victim of a stupid blunder which was entirely devoid of any suggestion of malice, willfulness, or inhumanity. It was mere negligence and since it resulted in no physical injury to plaintiff, she cannot recover for an injury to her health resulting from nervousness caused by the mistake. The rule is aptly expressed by the Supreme Judicial Court of Massachusetts in Spade v. Railway, 47 N. E. 88: "We remain satisfied with the rule that there can be no recovery for fright, terror, alarm, anxiety, or distress of mind, if these are unaccompanied by some physical injury; and, if this rule is to stand, we think it should also be held that there can be no recovery for such physical injuries as may be caused solely by such mental disturbance, where there is no injury to the person from without. The logical foundation of this

rule is that it is unreasonable to hold persons who are merely negligent bound to anticipate and guard against fright and the consequences of fright, and that this would open a wide door for unjust claims, which could not successfully be met."

The same has been held in England. In Victorian R. R. Com. v. Coultas, 13 App. Cas. 225, it was said: "Damages arising from mere sudden terror, unaccompanied by any physical injury, but occasioning a nervous or mental shock, cannot under such circumstances, their lordships think, be considered a consequence which, in the ordinary course of things, would flow from the negligence of the gatekeeper. If it were held that they can, it appears to their lordships that it would be extending the liability for negligence much beyond what that liability has hitherto been held to be. Not only in such a case as the present, but in every case where the accident caused by negligence had given a person a serious nervous shock, there might be a claim for damages on account of mental injury. The difficulty which now often exists in case of alleged physical injuries of determining whether they are caused by the negligent act would be greatly increased, and a wide field opened for imaginary claims."

Courts in this State have recognized the rule repeatedly (Connell v. Western Union, 116 Mo. 34; Trigg v. Railway, 74 Mo. 147; Harless v. Railway, 123 Mo. App. 22; Smith v. Railway, 122 Mo. App. 85), but have held that it does not apply in cases where the wrongful act is accompanied by offensive, insulting and humiliating conduct, or where the act itself is willful and inhuman. There being no elements of this character in the act under consideration, it must follow that plaintiff should not be permitted to recover on account of physical injuries wholly caused by nervous excitement. No pecuniary loss resulting from the negligence being shown,

we cannot do otherwise than to hold that she has failed completely in her proof.

The judgment is reversed. All concur.