## TRIGG v. THE ST. LOUIS, KANSAS CITY & NORTHERN RAILWAY COMPANY, *Appellant.*

1. **Action by Passenger against Carrier: EXCESSIVE JUDGMENT.** In an action by a female passenger against a railroad company for carrying her beyond her station, plaintiff had judgment for $1,000. There was no circumstance of malice, insult, wantonness, violence, oppression or inhumanity practiced by the company's servants toward plaintiff, but on the contrary, their conduct was polite and

| 74 | 147 |
| 116 | 39 |
| 116 | 633 |
| 54a | 441 |
| 74 | 147 |
| 119 | 277 |
| 74 | 147 |
| 61a | 592 |
| 74 | 147 |
| 75a | 454 |
| 74 | 147 |
| 80a | 158 |
| 74 | 147 |
| 85a | 497 |
| 74 | 147 |
| 91a | 9 |
| h91a | 13 |
| 74 | 147 |
| 97a | 519 |
| 100a | 71 |

considerate. *Held*, that the judgment was excessive in amount and must, for that reason, be reversed.

2.  ———: MEASURE OF DAMAGES. A passenger on a railroad train who is car ie᷑ beyond her station, by the negligence of the company, but v⁻i᷑ᵤout any circumstances of aggravation, and without receiving any personal injury, may recover compensation for the inconvenience, loss of time, labor and expense of traveling back, but not for anxiety and suspense of mind suffered in consequence of the delay, nor the effects upon her health, nor the danger to which she was exposed in consequence of the train being stopped at her station an insufficient length of time to enable her to get off.

*Appeal from Ray Circuit Court.* — HON. GEO. W. DUNN, Judge.

REVERSED.

*Wells H. Blodgett* for appellant.

Such damages as result from getting wet, catching cold or being made sick, are too remote to be allowed in an action on contract like this. *Hobbs v. R'y Co.*, L. R., 10 Q. B. 111; *P. P. Car Co. v. Barker*, 4 Col. 344; *s. c.*, 34 Am. Rep. 89; *Francis v. Transfer Co.*, 5 Mo. App. 7. Anxiety and suspense of mind, effects upon her health, and danger from train being stopped an insufficient time, are not elements of damage, not being connected with any bodily injury, (*Canning v. Williamstown*, 1 Cush. 451; Pierce Am. R. R. Law, 494; *Indianapolis, etc., R. R. Co. v. Staples*, 62 Ill. 313, 321; *Johnson v. Wells*, 6 Nev. 224; *s. c.*, 3 Am. Rep. 245;) or with any circumstances of malice, insult or inhumanity. *Indianapolis, etc., R'y Co. v. Birney*, 71 Ill. 391. Plaintiff was entitled only to compensation for time lost and expense incurred in returning to her station. *Walsh v. R'y Co.*, 42 Wis. 23; *s. c*, 24 Am. Rep. 376; *Hamlin v. R'y Co.*, 1 Hurlst. & N. 408; 31 Mo. 243; 71 Ill. 391. The verdict is excessive. The case has in it no feature which is even suggestive of wanton, willful, malicious or intentional misconduct on the part of the defendant or

its servants.   *Kansas City, etc., R. R. Co. v. Campbell*, 62 Mo. 585; *Kennedy v. R. R. Co.*, 36 Mo. 351.

*James W. Black, Joseph E. Black* and *James L. Farris* for respondent.

The amount of damages is not excessive, and the weight of evidence supporting the allegations of the petition and the issues presented, clearly shows that the jury were not influenced by prejudice or induced by fraud, or any other improper motive, to render the verdict returned by them. *Graham v. R. R. Co.*, 66 Mo. 536; *Kennedy v. R. R. Co.*, 36 Mo. 351; *Stoneseifer v. Sheble*, 31 Mo. 243; *Steinberg v. Gebhardt*, 41 Mo. 519; *Goetz v. Ambs*, 27 Mo. 28; *Hicks v. R. R. Co.*, 68 Mo. 314, 329.   The elements of damages were properly enumerated in the instruction given by the court. *Kennedy v. R. R. Co.*, 36 Mo. 351; *Hicks v. R. R. Co.*, 68 Mo. 329.

HOUGH, J.—In August, 1876, the plaintiff was at Norborne, in Carroll county, with her two children, one being four and the other between one and two years of age; and, desiring to go to Hardin, in Ray county, she purchased a ticket entitling her to be carried from Norborne to Hardin on one of defendant's passenger trains.   The train she took was the defendant's west-bound day train between St Louis and Kansas City, which usually arrived at Hardin in the evening, between sundown and dark.

The material allegations of the petition are substantially as follows:   " That she delivered her ticket to the conductor of the train, who was the agent of, and in the employ of, defendant; that said conductor had full knowledge that she was to get off at Hardin; that it was the duty of said conductor to stop said train at Hardin a sufficient length of time to permit plaintiff to get off at said station, but that, instead of stopping said train a reasonable length of time for plaintiff to get off at said station, he carelessly and negligently started almost instantly upon

stopping, and gave no assistance to plaintiff to get off; that she was not able to get off, and was exposed to great danger by the starting of the train, encumbered as she was with her children and baggage, and that, in consequence thereof, she was carried to Richmond and Lexington Junction, in the county of Ray, about six miles from said station of Hardin."

The defendant's answer denied all negligence on its part, and averred that it was in consequence of plaintiff's own negligence that she failed to get off said train at Hardin station.

The facts developed at the trial were as follows: When the train arrived at Hardin, the plaintiff, being encumbered with considerable baggage and two small children, got to the platform of the car and handed out her baggage, but before she could hand one of her children to the person who was there to help her off, the train started. The brakeman, seeing her situation, and thinking she was about to step off while the train was in motion, stepped in front of her and prevented her from doing so. This, he says, he did, because he thought she would fall under the train with her children. The brakeman then pulled the bell-cord to give the engineer a signal to stop, but the bell-cord was caught, so that the engineer did not get the signal. By that time the conductor had arrived, and, finding out the trouble, he sent the brakeman through the train to tell the engineer to stop; but, by the time the brakeman got to the engineer, and the engineer had stopped the train, it was some distance from the depot. The conductor then asked plaintiff if she would get off there, and she said she would not, and demanded that he should take her back to the depot at Hardin; the conductor testified that he told her that, after passing over the road, he had no right to go back, and that he was afraid to do so, for fear of running into something.

The testimony of the plaintiff, on this point, was as follows: "After a few moments the conductor came back

to me and said: 'We have carried you past your station —what will you do about it?' I said: 'You will have to carry me back.' He said: 'He could not do it,' and turned off. I thought he spoke very sharp. After we had gone to the trestle-work below the town, the train stopped and the conductor said: 'We will put you off here.' I said: 'No; if you had stopped within a reasonable distance, I would have got off.' It was then night. He then said: 'I cannot do any better than to carry you on to the Junction.' I said: 'If that is the best you can do, you will have to carry me there.'" The conductor then told her that they would soon be at the Junction, and that when they got there, he would have the porter come and carry her child to the waiting-room, and that he would meet her there. The conductor went to the waiting-room and asked her what was to be done; and she said he would have to get a conveyance to take her back to Hardin, and thereupon the conductor went and got a light spring wagon in which to carry her back, but she refused to go in it, saying she wanted a "hack." The conductor told her he could get nothing better than the spring wagon. Mr. Hughes, a by-stander, then advised her to go back on the freight train, but the conductor told her the freight train was behind time, and advised her to go back in the morning on the passenger. The conductor then took her and her children to the dining-room, and gave them, as she says, a good supper, for which he paid. He then told the landlady to give them a good room, and she gave them the best in the house, for which he also paid. He then gave the plaintiff fifty cents with which to pay her fare back to Hardin, which was only six miles from Junction, and went on with his train. It afterward appears that, at the request of plaintiff's father, the defendant's section boss at Hardin got out his hand-car and went to the Junction, and that plaintiff got up and returned with them of her own accord, and without any expense, to Hardin on the same night.

As to the measure of damages, the court instructed the jury, at the request of the plaintiff, as follows : If the jury find for the plaintiff, in assessing the damages, they will take into consideration the delay to which plaintiff was subjected, the anxiety and suspense of mind suffered by her in consequence thereof, the physical hardship to which it subjected her, and the effect upon her health in consequence thereof, and the danger to which she was exposed in consequence of the train being stopped an insufficient length of time, and will find such sum and amount as the jury may believe the plaintiff is justly entitled to from the evidence, not to exceed the sum claimed in the petition.

The jury found a verdict for plaintiff, and assessed her damages at $1,000; and judgment was rendered accordingly.

We are all of opinion that the judgment should be reversed because the damages are excessive. The evidence sufficiently supports the finding of the jury that the defendant was negligent in carrying the plaintiff beyond her destination, but as the case is utterly barren of any circumstances of aggravation, such as malice, insult, wantonness, violence, oppression or inhumanity, the damages awarded are so utterly disproportionate to the injury inflicted, that we feel called upon to interfere. It is true the plaintiff testified that when the conductor told her he could not take her back, she thought he " spoke very sharp." But taking this statement in connection with the subject of conversation and what he actually said, and viewing it also in the light of his subsequent language and conduct, we take it to mean only that the conductor was very positive—and as the action which the plaintiff proposed was such as involved, perhaps, not only her own safety, but the safety of all the passengers on the train, it was a matter about which he probably expressed himself with emphasis. Every passenger, and especially ladies unattended by an escort, have a right to expect and

*1. ACTION BY PASSENGER AGAINST CARRIER: excessive judgment.*

receive ordinary civility from all the servants of a railroad company, with whom they are necessarily brought in contact, and if there is any deviation from this standard, it should be on the side of courtesy; and if we were of opinion in this case, that the language or manner of the conductor connected with the negligence complained of bordered upon indignity or insult, we would not hesitate to let the verdict stand.

The instruction as to the measure of damages was erroneous. Neither the anxiety and suspense of mind suffered by the plaintiff in consequence of the delay, nor the effect upon her health, nor the danger to which she was exposed in consequence of the train being stopped an insufficient length of time, were proper elements of damage in this case, as no personal injury was received by the plaintiff and no circumstances of aggravation attended the wrongful act complained of. If the anxiety and suspense of mind suffered by the plaintiff in consequence of the delay in this case is a ground of recovery, similar suspense and anxiety of mind would be an equally good ground of recovery in a case where a railroad train should wrongfully stop to take on a passenger. The general rule is that "pain of mind, when connected with bodily injury, is the subject of damages; but it must be so connected in order to be included in the estimate, unless the injury is accompanied by circumstances of malice, insult or inhumanity." Pierce on Railroads, (Ed. 1881) 302; *Indianapolis, etc., R'y Co. v. Birney*, 71 Ill. 391. *Vide*, also, *Hobbs v. L. & S. R'y Co.*, L. R., 10 Q. B. 111; *P. P. Car Co. v. Barker*, 4 Col. 344; *Francis v. St. Louis Transfer Co.*, 5 Mo. App. 7. If anxiety and suspense of mind are not a ground of recovery here, of course the effects are not. There is no evidence that, as a consequence of the defendant's negligence, the plaintiff was subjected to any physical hardship. The only exposure suffered by her was in returning on a hand-car at night in the month of August, to Hardin, and that was voluntarily encountered by her. *Francis v.*

2. ——: measure of damages.

*St. Louis Transfer Co.*, 5 Mo. App. 7. We have not been referred to any case in which a simple exposure to averted danger has been held to be a ground of recovery, and we do not think it should be, unless the exposure were wanton and produced injury. The measure of damages in a case like the present should be limited to compensation for the inconvenience, loss of time, labor and expense of traveling back. *Nelson v. A. & P. R. R. Co.*, 68 Mo. 593; 2 Redfield on Railways, (5 Ed.) 262. The judgment will be reversed and the cause remanded. The other judges concur.