DELIA HICKEY, Defendant in Error, v. JOSEPH WELCH, Plaintiff in Error.

St. Louis Court of Appeals, November 19, 1901.

1. **Tort: MENTAL ANGUISH: DAMAGES: ACTION.** Where an act done by defendant was willful, malicious, or accompanied by circumstances of inhumanity and oppression, an action will lie for mental anguish, whether physical harm was done or not.

2. ——: ——: ——. Where the act charged was willfully, wantonly or maliciously done, and especially where its obvious purpose

was to wound, humiliate or oppress another, substantial damages may be given for the mental suffering it entailed.

3. ———: ———: ———. In the case at bar, the evidence tends to show that the defendants' entrance and acts on plaintiff's premises constituted a forcible trespass, for which plaintiff is entitled to compensation; and her anguish on account of defendant's violent and abusive conduct may be taken into account in connection with the trespass, in aggravation of the damages.

4. **Assault, Definition of.** An assault is an inchoate battery. The wrong is putting a person in fear of violence, so that any act fitted to have that effect on a reasonable man, is an assault.

5. ———: PROOF. And in the case at bar, there was proof that an assault was committed by defendant on plaintiff.

6. ———: ———: ACTUAL AND PUNITIVE DAMAGES. And an action lies for such a disturbance of one's peace; and the resulting anxiety, fright and other injuries, mental or physical, may be considered in estimating the actual, not merely the punitive damages, as they may in any case where a personal injury is inflicted.

7. **Tort:** DAMAGES: FUTURE INJURY: MEDICAL ATTENDANCE. Damages will be given for any future injury resulting from a tort which is reasonably certain to happen and for expenses of medical attendance as much as for any other.

8. **Married Women:** DEBTS FOR MEDICAL ATTENDANCE: STATUTORY CONSTRUCTION. Under section 4335, Revised Statutes 1899, a married woman has been made *sui juris*, and if she incurs a debt for medical attendance or makes an outlay for such services, when such services have been occasioned by the tort of another, she may recover the same.

9. **Damages, Exemplary:** EVIDENCE. In the case at bar, the defendants' behavior was heinous, and displayed the utmost spite, malice and inhumanity, and clearly entitled the plaintiff to exemplary damages.

Appeal from St. Louis City Circuit Court.—*Hon. Walter B. Douglass,* Judge.

AFFIRMED.

*Meigs & Noble* and *Klein & Hough* for plaintiff in error.

(1)   The instruction asked by defendant at the close of plaintiff's case that plaintiff could not recover, should have been given.   Defendant inflicted no physical injury on plaintiff.   She can not recover for fright or mental pain and anguish, or the effects of either unless accompanied with physical injury.   Strange v. Railroad, 61 Mo. App. 586; Connell v. Tel. Co., 116 Mo. 34; Spohn v. Railroad, 116 Mo. 617; Mitchell v. Railroad, 34 L. R. A. (N. Y.) 781; Ewing v. Railroad, 14 L. R. A. 666.   (2)   The giving of plaintiff's instruction 1, and the refusal of defendant's fourth instruction, and failing to present to the jury by instruction the hypothesis stated in that instruction of defendant, excluded from the consideration of the jury the defendant's evidence and was error which should reverse the case.   Griffith v. Conway, 45 Mo. App. 574; Hohstadt v. Daggs, 50 Mo. App. 240; Wood, Mowing & Reaping Machine Co. v. Bobbst, 56 Mo. App. 427; Maack v. Schneider, 57 Mo. App. 431.

*Montague Punch* for defendant in error.

(1)   The general rule is, that "pain of mind, when connected with bodily injury, is the subject of damages; but it must be so connected, in order to be included in the estimate unless the injury is accompanied by circumstances of malice, insult or inhumanity."   The principle invoked by plaintiff in error, in point 1 of his brief, has no application in cases of willful wrong to the person, affecting the liberty, character, reputation, personal security and domestic relations, and only applies to cases of negligence.   Trigg v. Railroad, 74 Mo. 153; Connell v. Tel. Co., 116 Mo. 40; Snyder v. Railroad, 85 Mo. App. 497; Randolph v. Railroad, 18 Mo. App. 617; Hyatt v. Railroad, 19 Mo. App. 293; Stuppy v. Hof, 82 Mo. App. 274; Spade v. Lynn, 168 Mass. 285; 8 Am. and Eng. Ency. of Law (2 Ed.), 667, 668, 669; Schmitz v. Railroad, 119 Mo. 277.   (2)   In a case like the one at bar, all dam-

ages as appears from the evidence will reasonably result to plaintiff from the injuries in the future, are recoverable. Britton v. City of St. Louis, 120 Mo. 192; Chilton v. City of St. Joseph, 143 Mo. 192; Hansberger v. Elec. Ry. Co., 82 Mo. App. 578; Gerdes v. Iron and Foundry Co., 124 Mo. 360-1; Bartley v. Trorlicht, 49 Mo. App. 220; Barr v. City of Kansas, 121 Mo. 30; Railroad v. McLendow, 63 Ala. 266; St. Louis, etc., Co. v. Blackburn, 15 S. W. 469; Wallace v. Railroad, 158 Mass. 261; Hopkins v. Railroad, 36 N. H. 9; 72 Am. Dec. 287; Williams, J., in Goadhart v. Railroad, 177 Pa. St. 1; Baker v. Hagey, 177 Pa. St. 128.

### STATEMENT OF THE CASE.

Plaintiff and her family occupied as their home a house belonging to Elizabeth Welch, wife of the appellant. The premises adjoined defendant's residence. Prior to the injuries complained of there had been litigation about the rent and a bitter feeling existed between the families. The grievances alleged in this action are that one morning appellant broke down the fence between the rear of plaintiff's and defendant's lots, entered plaintiff's back yard, dug a ditch and threw up a bank of earth, around the water-closet used by plaintiff's family, to a height of five feet, making it dangerous and nearly impossible for plaintiff and her children to enter the closet. While doing this work he grossly abused plaintiff and her husband and applied vituperative and insulting language and epithets to them, got a shotgun and pistol, pointed the latter at plaintiff and threatened to shoot her and afterwards menaced her with the gun.

Plaintiff, it seems, had formerly suffered from severe neurasthenia, or nervous exhaustion, which caused her much distress; but a few months before the indignities stated, she had entirely recovered. The acts of the defendant were charged to have so terrified, shocked and humiliated her as to

bring on a recurrence of the disease in a more violent form than she had it the first time, greatly impairing her health, causing her to suffer from numbness in her limbs, loss of memory, inability to concentrate her thoughts, constant pains, spasmodic jerkings and twitchings of the muscles, a recurrent vision of defendant pointing a gun at her, dread of insanity and other symptoms indicative of a profoundly disordered nervous system. Her own testimony and that of her physicians supported these charges.

Appellant denies all violence or abuse, claims to have entered the premises in obedience to an order from the board of health directing repairs and cleansing of the water-closet, and that he took a shotgun to defend himself with if attacked by plaintiff, but no pistol.

There was testimony tending to prove the order from the board of health was a ruse and that Welch procured it himself as a pretext for making the closet unusable and thereby forcing plaintiff to abandon the premises. She was not in arrears for rent. Plaintiff prays damages for the injury to her health, her pain and other sufferings caused by defendant's alleged torts, charged to have been wantonly and maliciously committed, and expense of treatment.

Defendant asked an instruction in the nature of a demurrer to the evidence at the close of plaintiff's evidence. The court refused it and submitted the issue to the jury. A verdict was returned in her favor for two hundred dollars actual and three hundred punitive damages.

GOODE, J.—It is claimed respondent was not physically injured by appellant and therefore her case must fail. There are several good answers to this contention.

Some courts have gone so far in applying the rule that damages are not recoverable for mental anguish or fright, as to practically hold that no injury, however serious, to a person's health as the result of a negligent tort, even though insan-

ity, epilepsy or some other fearful disease ensues, is actionable, if the tort produced terror or anxiety; it being assumed apparently that these mental phenomena, instead of the wrongful act, were the cause of the subsequent malady. Mere alarm or distress of mind is not, and, ought not to be, a cause of action in itself. Trigg v. Railway Co., 74 Mo. 147; Connell v. Telegraph Co., 116 Mo. 34. Such emotions shortly pass off and the patient is as well as ever. They are easily feigned and often arise from trivial or imaginary danger, and to make them actionable, would, as has often been said, open the door to fraudulent demands and encourage litigation over fanciful and fictitious wrongs, when no real harm was done. Besides, there is no criterion by which to estimate the damages for mental disquietude and if damages were allowed therefor, they would necessarily be conjectural and speculative. Pleasant emotions are not among the rights which the law safeguards—property, health, reputation, personal liberty and security. But when a nervous disorder, acute or chronic, or an illness such as reputable physicians recognize as a genuine disease and can trace with reasonable certainty to its true cause, follows an unlawful act, no sound reason can be given why the party injured should not be compensated in damages, although there was no visible hurt at the time. Why should the fact that the sufferer was frightened cut him off from redress? Fright is itself a result of an agitation or shock to the nervous system, and when this shock is severe enough, it produces more than fright, namely, an impairment of health in some form or other, and more or less serious. All emotions are due to minute physical changes in the nervous system and when the change resulting from the shock, is extensive, it sometimes induces disease. The suffering thus occasioned is as much due to physical injury as that which results from an open wound on the surface of the body. If human bodies were composed only of bones, muscles and viscera, or if suffering could only be caused by injuring those parts, the theory of this legal doctrine would

be accurate; but it is matter of common knowledge that a person may be physically whole and uninjured, to all appearances, and still be a great sufferer from nervous afflictions.' A physical injury is at the basis of this class of disorders as of all others, but is too obscure to be readily observed. False pathology and physiology seem to have led to applications of the rule in question, which were extremely unjust. The ancient superstition which found the proximate cause of mental and nervous diseases in diabolical possession, was scarcely more ridiculous than the theory that when an ailment of that kind follows a great fright, due to another's tortious act, the fright and not the tort is the proximate cause of the injury. Such diseases, like all others, have their origin in a physical lesion, not a metaphysical state. It was justly remarked by a learned jurist in a case of this kind: "As the relation between fright and injury to the nerves or brain structure of the body is a matter which depends entirely upon scientific or medical testimony, it is impossible for any court to lay down as a matter of law, that if negligence caused the fright and such fright in its turn so affected such structure as to cause injury to health, such injury can not be a consequence which by ordinary course of thought would flow from the negligence, unless such injury accompanied such negligence in point of time." Bell v. Great Northern Railway, L. R. 26 Ir. Exch. Div. 428.

It was said in Sloane v. Railway Co., 111 Cal. 668: "It is a matter of general knowledge that an attack of sudden fright on an exposure to imminent peril has produced in individuals a complete change in their nervous system and rendered one who was physically strong and vigorous, weak and timid—such a result must be regarded as an injury to the body rather than the mind, even though the mind be at the same time injuriously affected."

The cases which go to the length of holding that no recovery can be had for suffering following fright or injury occasioned by a tort, do not agree in the reason for the rule. Some

put it on the ground that it would multiply litigation too much to make such injuries actionable; others on the ground that the damages are too remote and speculative; and still others on the ground that because the agitated mental state of the injured person came between the wrongful act and the alleged injury, the act was not the proximate cause and such results could not have been expected to flow from it. Mitchell v. Railway Co., 151 N. Y. 107; International Tel. Co. v. Saunders, 32 Fla. 434, 21 L. R. A. 810; Mentzler v. Telegraph Co., 93 Iowa 752. The case of Mitchell v. Railway Co. is remarkable in that a recovery was denied for a miscarriage, and the suffering incident thereto, which followed a great fright caused by the defendant's tort. The opposite conclusion was reached, on more logical grounds we think, in Oliver v. Town of La Valle, 36 Wis. 592; Railway Co. v. Hunerberg, 16 Ill. App. 387.

Regarding the first of the above reasons, it may be said that if the injury complained of is one which falls in the category of well-known diseases, whose symptoms physicians are familiar with, there is no more chance for imposition than in the case of other injuries, and hence no reason to apprehend a flood of meretricious litigation; if the litigation is meritorious it is the duty of courts to entertain it.

Neither would the damages be more conjectural than where they are allowed for prospective injury and suffering; and damages for future injury may always be recovered if shown to be reasonably certain to occur.

The answer to the other objection is, that when such an injury follows a tort and is proved by competent testimony to have resulted from it, the tort is the proximate cause, according to the accepted meaning of the phrase. An act is a proximate cause of an injury in a legal sense, when the injury was the natural and probable consequence of the act in the light of attending circumstances. Nor is it necessary that the harmful result should immediately follow the tort, provided it is trace

able directly to it without any other cause intervening. "The primary cause may be the proximate cause of a disaster though it may operate through successive instruments, as an article at the end of a chain may be moved by a force applied to the other end, that force being the proximate cause of the movement; or as in the oft-cited case of the squib thrown into the market place. The question always is, was there an unbroken connection between the wrongful act and the injury, a continuous operation? Did the facts constitute a continuous succession of events so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury?" Milwaukee, etc., Railway Co. v. Kellogg, 94 U. S. 469. And to defeat recovery on the ground of an intervening cause, it was ruled: "The new, independent, intervening cause must be one not produced by the wrongful act or omission, but independent of it and adequate to bring the injurious result. Whether the natural connection of events was maintained or was broken by such new, independent cause is generally a question for the jury." Mack v. Railway Co., 52 S. C. 323. A plaintiff may obtain damages for concussion following a jar. "Railway spine" is a frequent ground of recovery. If such a result is actionable when it develops later from a shock, why refuse relief when the shock is received through the mind? Through the sense of sight or hearing instead of touch? In truth, the courts which deny relief for injuries following fright, are so impressed with the injustice of the rule that they seize on any pretext to allow a recovery—even the most frivolous legal wrong and however slight the immediate harm may be. City Transfer Co. v. Robinson, 12 Ky. Law Rep. 555; Larson v. Chase, 47 Minn. 307; Meagher v. Driscoll, 99 Mass. 281.

In this case, there was abundant expert testimony to prove plaintiff's nervousness, or rather specific nervous disease, was due, with reasonable certainty, to the shock she received from defendant's conduct. That disease was unquestionably a

physical injury, and we do not think she ought to be denied redress for it and the suffering of mind which went with it, merely because she was paralyzed with terror at the time defendant abused and threatened her.   If she had had mental anguish and nothing more, the case would be different.   We think there is nothing inconsistent in this view with what was decided by our Supreme Court in Trigg v. Railway Co. or Connell v. Telegraph Co., supra.

But nearly all the cases in which the rule was applied, that no recovery is permissible for mental anguish, fright or their *sequelae*, were where the tort alleged was negligence. The decisions usually state that if the act was willful, malicious or accompanied by circumstances of inhumanity and oppression, an action lies for mental anguish, whether physical harm was done or not.   A precedent exactly deciding this proposition is not at hand; but it is assumed to be the law in the text-books and in most of the cases which exonerate the defendant where negligence is the basis of the action.

In Trigg v. Railway Co., 74 Mo. 147, where the plaintiff sought to recover for anxiety, on account of being carried by the defendant past her destination, it was said there were no circumstances of aggravation, "such as malice, insult, wantonness, violence, oppression or inhumanity."   That remark, however, was made in connection with the claim for punitive damages.

So in Deming v. Railway Co., 80 Mo. App. 153, it was said:   "The general rule is that mental anguish, when connected with bodily injury, is the subject of damages, but it must be so connected in order to be included in the estimate of damages, *unless the injury is accompanied by circumstances of malice, insult or inhumanity.*"   Many of these cases are by passengers against railroad companies for being carried past their destination, as in the Trigg case, or against telegraph companies by persons to whom messages were sent, for anxiety

caused by failure to deliver the message promptly, such as Connell v. Telegraph Co., 116 Mo. 34.

The Supreme Court of Massachusetts, in applying the rule, was careful to limit it to negligence cases, saying: "It is hardly necessary to add that this decision does not reach those classes of action where an intention to cause mental distress or to hurt the feelings is shown, or is reasonably to be inferred, as for example, in cases of seduction, slander, malicious prosecution or arrest and some others. Nor do we include cases of acts of gross carelessness or recklessness, showing utter indifference to such consequences, when they must have been in the actor's mind." Spade v. Railway Co., 168 Mass. 285.

We have no doubt that where the act charged was willfully, wantonly or maliciously done, and especially where its obvious purpose was to wound, humiliate or oppress another, substantial damages may be given for the mental suffering it entailed. West v. Forrest, 22 Mo. 344. Assuming the testimoney for the plaintiff in the present case to be true, it is emphatically one of that kind, the defendant's behavior having been atrocious.

Moreover, the evidence tends to show the defendant's entrance and acts on plaintiff's premises constituted a forcible trespass, for which she is entitled to compensation; and her anguish on account of his violent and abusive conduct may be taken into account in connection with the trespass in aggravation of the damages. Larson v. Chase, Meagher v. Driscoll, supra; Mayer v. Gordon, 113 Ind. 218.

Further, there was proof an assault was committed by defendant on plaintiff. An assault is an inchoate battery. The wrong is putting a person in present fear of violence, so that any act fitted to have that effect on a reasonable man is an assault. Webb's Pollock on Torts, 251. Witnesses swore defendant pointed a pistol at plaintiff and threatened to shoot her, and likewise raised a shotgun in a menacing way. Those acts were an assault. 1 Wharton's Criminal Law (10 Ed.),

1606; Beach v. Hancock, 27 N. H. 223; State v. Dooley, 121 Mo. 591. An action lies for such a disturbance of one's peace; and the resulting anxiety, fright and other injuries, mental or physical, may be considered in estimating the actual, not merely the punitive damages, as they may in any case where a personal injury is inflicted. Beach v. Hancock, 27 N. H. 223; Barbee v. Reese, 60 Miss. 906; Canning v. Williamstown, 55 Mass. 451; Smith v. Railway Co., 23 Ohio St. 10; City Transfer Co. v. Robinson, 12 Ky. Law Rep. 555; Hewlett v. George, 68 Miss. 703; Shepard v. Railway Co., 77 Iowa 54; Curtis v. Railway Co., 87 Iowa 622; Railway Co. v. Flagg, 43 Ill. 364.

Complaint is made that the instruction on the measure of damages permitted a recovery for the expense of future medical treatment. Damages will be given for any future injury resulting from a tort which is reasonably certain to happen and for the expense of medical attendance as much as for any other. 3 Sutherland on Damages, 1251; Hopkins v. Railway Co., 36 N. H. 9; Railway Co. v. McLendon, 63 Ala. 266; Baker v. Hagey, 177 Pa. St. 128; Britton v. St. Louis, 120 Mo. 437; Chilton v. St. Joseph, 143 Mo. 192.

It is also assigned for error that plaintiff was permitted to recover the cost of medical attendance at all, on the ground that her husband was liable for such necessary expense instead of her. That was once law in this State, but since a married woman has been made *sui juris,* is no longer. If she personally incurs such a debt or makes such an outlay, she may recover it. R. S. 1899, sec. 4335; Hill v. Sedalia, 64 Mo. App. 494.

This, too, was clearly a case for exemplary damages. The defendant's behavior, if the plaintiff's evidence was true, as the jury believed, was heinous and displayed the utmost spite, malice and inhumanity.

The foregoing considerations lead to an affirmance of the judgment, in which all concur.