WINNIE BOUILLON, Appellant, v. LACLEDE GAS LIGHT COMPANY, Respondent.

St. Louis Court of Appeals, May 17, 1910.

1. **ASSAULT AND BATTERY: What Constitutes Assault: Violent Language.** A wrongful entry into a residence by a gas company's agent, and the frightening of plaintiff, so as to cause a miscarriage, by using violent language toward her nurse, when the latter attempted to shut the agent out as directed by plaintiff, was not an assault upon plaintiff.

2. **TRESPASS: Entering House.** Although an agent of a gas company had the right to enter a basement where a gas meter was kept, he had no right to enter or pass through the flat of a person who was not a consumer of gas, for the purpose of gaining access to such basement.

3. ——: **Damages: Consequences of Tort.** A trespasser is liable for such injuries as result naturally, necessarily, and proximately from his wrongful act.

4. ——: **Collector Entering House Against Protest: Violent Language: Damages: Fright and Mental Anguish Recoverable Elements: Anticipation of Result.** Fright and mental anguish arising from a trespass to person or property, as well as a physical injury resulting from fright, are proper elements

of damage in an action for trespass, whether or not the wrongdoer reasonably anticipated the result of his trespass; so that, where defendant's agent wrongfully entered plaintiff's flat to read a gas meter, which was in fact in a part of the house not occupied by plaintiff, and caused her to have a miscarriage by frightening her by the use of violent language to her nurse, plaintiff could recover damages for the miscarriage resulting from the fright, and mental anguish caused by the trespass, though defendant's agent did not know plaintiff was confined because of pregnancy.

5. **NEGLIGENCE: Damages: Fright and Mental Anguish.** In an action for negligence, no cause of action exists for a mere mental disturbance, such as fright or anguish, not resulting from a physical injury, unless it be under circumstances of malice, insult or inhumanity directed against the plaintiff.

6. **TRESPASS: Wilful and Malicious: Intent of Trespasser.** Where a trespass is wilful and malicious, or of such a character or committed under such circumstances as to render it liable to commit injury to person or property, the trespasser is liable to the person injured although he had no intent to do an injury.

7. **DAMAGES: Tort Actions: Remote Damages.** In cases of affirmative wrong, damages are not remote, as distinguishable from proximate, when they are directly traceable to the wrongful act of the tortfeasor.

8. **MASTER AND SERVANT: Wrongful Act of Servant: Liability of Master.** In order to render the master liable for the wrongful act of the servant, it is not essential the latter be specially authorized nor that the particular act complained of be necessary to the performance of his duties, but it will be sufficient if it appear that the agent was acting in the course of his employment, although outside of the master's instructions.

9. ———: ———: ———: **Master Held Liable.** The agent of a gas company authorized to read gas meters was acting within the scope of his employment in entering plaintiff's part of the flat and attempting to open the door for the purpose of reading a meter, though the meter was in fact in a part of the building not occupied by her, so as to make the company liable for physical injuries to plaintiff from the agent's use of violent language in attempting to enter.

Appeal from St. Louis City Circuit Court.—*Hon. Moses N. Sale,* Judge.

REVERSED AND REMANDED.

*P. P. Mason* and *A. A. Paxson* for appellant.

(1) "Where the facts are in dispute or more than one inference can be drawn therefrom the question of the employee's negligence is for the jury, as is the cause of the injury, and whether the servant acted within the scope of his employment. If there is any evidence tending to prove the cause of action, from which different inferences may be drawn, or if there is a conflict in the evidence as to material issues, a nonsuit or directed verdict should not be granted." 26 Cyc., pp. 1576-7; Gayle v. Mo. C. & F. Co., 177 Mo. 427. (2) The liability of the master for his servant's torts is not based upon any personal authority in the agent to do the act, but upon public policy, and that it is more reasonable when one of two innocent persons must suffer from the wrongful act of the third person, that the master, who has employed the servant in a position of trust and confidence, should suffer, than a stranger. Chandler v. Gloyd, 217 Mo. 412; Barree v. Cape Girardeau, 197 Mo. 391; Chicago Herald Co. v. Bryan, 195 Mo. 574; Payne v. Railroad, 105 Mo. App. 155; Knowles v. Bullene, 71 Mo. App. 341; Regan v. Reed, 96 Ill. App. 460. (3) Even the servant's failure to obey instructions will not relieve the master from liability for the tort of his servant committed within the scope of his employment. Paint & Color Co. v. Conlon, 92 Mo. 221; Whitehead v. Railroad, 99 Mo. 263; Houck v. Railroad, 116 Mo. App. 559; Compher v. M. K. Tel. Co., 127 Mo. App. 553; Dreyfus v. Railroad, 124 Mo. App. 585. (4) Annoyance, vexation, indignity and mental anguish are elements of damage, as well as the actual physical pain caused by the bringing on of the miscarriage, and plaintiff was entitled to go to the jury on the evidence even though the court below was right in its notion that the physical damages by reason of the miscarriage were too

remote. Railroad v. Flagg, 43 Ill. 368; O'Donnell v. Transit Co., 107 Mo. App. 34; Caster v. Oster, 134 Mo. App. 146; Thurman v. Tel. Co. (Ky.), 14 L. R. A. (N. S.) 499; Trigg v. Railroad, 74 Mo. 153; West v. Forrest, 22 Mo. 344. (5) Violent demonstrations, angry quarreling, profane and boisterous conduct, within hearing of a sick person or one in a delicate condition, renders the guilty party liable for the damage caused by such conduct. Phillips v. Dickerson, 85 Ill. 12, 28 Am. R. 607; Barber v. Reese, 60 Miss. 906; Hill v. Kimball, 76 Tex. 210, 7 L. R. A. 618; Mann B. Co. v. Dupre, 54 Fed. 646; Richberger v. Express Co., 73 Miss. 161; Lesch v. Railroad, 93 Minn. 435; Brownback v. Frailey, 78 Ill. App. 262; Wyant v. Crouse (Mich.), 53 L. R. A. 626, 633; Tunnicliff v. Railroad (Mich.), 32 L. R. A. 142.

*Percy Werner* for respondent.

(1) No cause of action is shown by the evidence. Defendant's servant at most was guilty of a disturbance of the peace for which he is personally responsible. Coarse or unbecoming language, unaccompanied by gestures indicating an intention to inflict bodily harm, does not constitute an assault, and the cause of action attempted to be set up certainly does not fall within any other subdivision into which actions arising out of torts are classified. 28 Am. and Eng. Ency. of Law (2 Ed.), p. 257; 2 Am. and Eng. Ency. of Law (2 Ed.), 957; Stearns v. Sampson, 59 Me. 568 (cases on Torts, Ames, Cambridge, 1893). (2) Whatever was said and done by defendant's servant, so far as complained of, was, according to the testimony, impelled by motives wholly personal to himself, and simply to gratify his own feeling of resentment, and was therefore not within the scope of his employment, and the principle of *respondeat superior* does not apply. Vogeli v. Pickle Co., 49 Mo. App. 623; Hael v. Railroad, 119 Mo. 325; Harde-

man v. Williams, 150 Ala. 415, 43 So. 726, 10 L. R. A.
(N. S.), 653; Collette v. Rebori, 107 Mo. 711; Meehan v.
Moorwood, 52 Hun 566. (3) The damages, physical
effects flowing from agitation caused by the use of un-
becoming or coarse language within the hearing only of,
and not directed at the injured party, are too remote,
especially where the effects are due to a poor physical
condition which is unknown to the party charged with
using the language, and where no maliciousness or wil-
fulness is charged, and the result could not reasonably
have been foreseen. Francis v. St. Louis Transfer Co.,
5 Mo. App. 7; Trigg v. Railroad, 74 Mo. 147; Strange
v. Railroad, 61 Mo. App. 586; Deming v. Railroad, 80
Mo. App. 152; Connell v. Telegraph Co., 116 Mo. 34;
Mitchell v. Railroad, 151 N. Y. 107; Phillips v. Dick-
erson, 85 Ill. 11; Victorian Ry. Com'rs v. Coultas, 13
App. Cs. 222.

NORTONI, J.—This is a suit for damages accrued
through physical injuries which resulted from fright.
At the conclusion of plaintiff's case the court directed
a verdict for defendant and plaintiff prosecutes the ap-
peal.

It appears that plaintiff, a married woman, resides
in the lower flat at 812 North Jefferson avenue in the
city of St. Louis and at the time in question was there
sick in bed. She was pregnant with child and threat-
ened with a miscarriage. She had been confined to her
bed in care of a physician for about one month when,
on October 16, defendant's agent came to the front door
of her apartment and demanded admission for the pur-
pose of reading the gas meter. It appears plaintiff did
not use gas at all in connection with her household but
a meter had been installed in the basement immediately
under her flat in connection with the flat above, occupied
by other tenants. Plaintiff testified that she heard
some one knocking at the front door, which, it seems,
was almost adjacent to the room in which she was con-

fined to her bed. Upon hearing loud raps at the door, she directed the nurse to answer the call. The nurse opened the door and defendant's agent said, "I am from the Laclede Gas Company and I came to read that meter." The nurse answered, "You can't come through here to-day, the lady is awfully sick here," to which the agent replied, "I have to read the meter." Thereupon plaintiff said to the nurse, "Cora, shut the door; it is getting awfully cold in here," and defendant's agent grabbed the door, saying, "Don't you shut the door on my hand." Plaintiff said to the nurse, "Shut the door on his hand if he don't take it out," and said to the defendant's agent, "You haven't any right to molest me when I am sick, and I don't use gas anyhow." To this defendant's agent replied, "By God, I don't know whether you do or not and I am going to find out. That is what I am going to find out." Plaintiff relates defendant's agent said "That is what he was there for, and that, by God, he was going to find out," and I said, "For mercy sake, Cora, shut the door," and he said "God damn it, don't you shut the door on my hand," and I said, "For goodness sake tell him to go around the back and go in the way he has been coming in," whereupon defendant's agent desisted his attempt to go through plaintiff's apartment and entered the basement by a side or back door as was proper.

The testimony discloses that the controversy between defendant's agent and plaintiff's nurse at the door continued for probably five minutes; that as a result thereof plaintiff became greatly frightened and shocked and was seized immediately thereafter with a nervous chill. It seems that she had several chills during the evening and suffered a miscarriage on the following day as a result of the excitement and fright occasioned by the conduct of defendant's agent in unlawfully attempting to enter her apartment. The nurse who attended plaintiff at the time gave testimony to the same effect as plaintiff, and her physician testified.

that in his opinion the miscarriage occurred as a result of the fright occasioned by the conduct of defendant's agent. It appears too that plaintiff was sick for a considerable period thereafter and that her health is permanently impaired as a result of the misfortune.

Defendant insists the facts relied upon present no cause of action known under the various heads of tort, unless it be for an assault, and then proceeds to point out why no assault on plaintiff is shown by the proof. No one can doubt that the case fails to disclose an assault on plaintiff as the controversy was principally had with, and all the insulting language directed against, another, the nurse. However this may be, the facts reveal a valid ground of liability on the score of trespass, and this is true notwithstanding the damages laid are not for the commission of the initial act of trespass, but relate instead to its consequence alone. Although defendant's agent had a right to enter the basement beneath plaintiff's apartment for the purpose of reading the gas meter, it is entirely clear that he had no authority to enter or pass through plaintiff's flat for that purpose. She was not a consumer of gas and the gas meter was in no sense connected with her household. Plaintiff is assured peaceful repose of her home against unwarranted intrusion from others. A trespasser is liable to respond in damages for such injuries as may result naturally, necessarily, directly and proximately in consequence of his wrong. This is true for the reason the original act involved in the trespass is unlawful. [Wyant v. Crouse (Mich.), 53 L. R. A. 626.] As to what matters do so result, depends upon the particular facts of each case. The consequence may be one thing in one case and something different in another; but be this as it may, if an injury is directly traceable to the unlawful invasion of plaintiff's right as the proximate cause, a recovery may be had therefor. It may be that fright is a necessary and natural result of a trespass committed upon one's dwelling by force or violence and that the

Bouillon v. Gas Light Co.

fright so entailed occasions a physical injury. If such be the case, then the injury or damage entailed as a result of the fright occasioned in the first instance by the mode or manner of the trespass is regarded as consequential to the trespass. [Hickey v. Welch, 91 Mo. App. 4; McAfee v. Crofford, 54 U. S. 447, 13 Wall. 447; Lesch v. Great Northern, etc., Ry. Co., 93 Minn. 435; Brownback v. Frailey, 78 Ill. App. 262; Barbee v. Reese, 60 Miss. 906; Yoakum v. Kroeger (Tex. Civ. App.) 27 S. W. 953; Chicago, etc., Ry. Co. v. Hunerberg, 16 Ill. App. 187; Preiser v. Wielandt, 48 App. Div. N. Y. 569; 1 Cooley on Torts (3 Ed.), 95, 96, 97, 98.] The doctrine is that though a mere mental disturbance of itself may not be a cause of action in the first instance, fright and mental anguish are competent elements of damage if they arise out of a trespass upon the plaintiff's person or possession and may be included in a suit for the trespass if plaintiff chooses so to do, or, if a physical injury results from such fright, a cause of action accrues from the trespass for compensation as to the physical injury and its consequences alone, which may be pursued even though plaintiff seeks no compensation for the original wrong. [Hickey v. Welch, 91 Mo. App. 4; Larson v. Chase, 47 Minn. 307; Meagher v. Driscoll, 99 Mass. 281.]

In instructing a verdict for defendant, it seems the trial court acted upon the general rule which obtains with respect to negligent torts as though the damages sought to be recovered were remote. It must be conceded that in such cases no cause of action exists for a mere mental disturbance, such as fright or anguish not resulting from a physical injury, unless it be in circumstances of malice, insult or inhumanity directed against the plaintiff. [Trigg v. St. Louis, etc., Ry. Co., 74 Mo. 147; Connell v. Western Union Tel. Co., 116 Mo. 34, 22 S. W. 345.] And it is true it does not clearly appear in this case that the words of insult were directed against the plaintiff personally. In other words, the

profane epithets and the disturbance of the peace, though
in plaintiff's hearing, it seems, were more particularly
directed against her companion, the nurse.   However,
the rule denying compensation for mere mental disturb-
ance unaccompanied by physical injury is said to be
confined to cases other than affirmative wrongs such as
trespass and intentional or wanton torts.   [Preiser v.
Wielandt, 48 App. Div. N. Y. 569; 62 N. Y. Supp. 890;
Hickman Welch, 91 Mo. App. 4, 13; 1 Cooley on Torts
(3 Ed.) 97; 1 Sutherland on Damages (3 Ed.), sec.
44.]   Recoveries are therefore properly allowed in cases
where no violence or insult is directed against the plain-
tiff in person, if it appears physical injury has resulted
from fright occasioned by defendant when in the act of
committing a trespass upon her possessions. In Watson
v. Dilts, 116 Ia. 249, the defendant entered plaintiff's
house in the nighttime and stealthily passed to an up-
stairs room where he engaged in a physical encounter
with a member of plaintiff's family, the result of which
operated to frighten plaintiff and occasioned a subse-
quent miscarriage.   In giving judgment on the case, the
court expressed the opinion that although the assault
was not directed against plaintiff and no physical in-
jury was inflicted in the first instance, defendant was
liable to respond for such consequences as were proxi-
mate to his wrongful act in committing the trespass.
So, too, in Hill v. Kimbell, 76 Tex. Sup. 210, 7 L. R. A.
618, 13 S. W. 59, defendant, who was plaintiff's land-
lord, entered upon the premises in her possession and
chastised two negroes with such severity in her presence
as to occasion great fright and emotions of the mind
which operated to induce a miscarriage.   The Supreme
Court said that though the assault was not upon plain-
tiff, it occurring as a result of a trespass on her premi-
ses, the defendant should respond in damages even
though it was unaccompanied in the first instance with
physical injuries as to her. Indeed, the rule is that where
the trespass is willful and malicious or of such a char-

acter or committed under such circumstances as to ren-
der it liable to commit injury to person or property, the
trespasser is liable to any person injured and it is not
necessary that he should intend to do such injuries.
[4 Sutherland on Damages (3 Ed.), sec. 1029.]

There are cases which go to the effect that before
plaintiff may recover as for a miscarriage caused by
fright it must appear the defendant was aware of her
condition and notwithstanding such knowledge occa-
sioned the fright by entering into an altercation in her
presence. These authorities proceed as though no obli-
gation rests upon defendant to respond except it ap-
pear he breached the obligation to exercise ordinary
care. That is to say, they proceed as though no damages
may be recovered unless it appear that defendant was
in a position to anticipate the particular result as a
probable sequence of the fright. See Phillips v. Dick-
erson, 85 Ill. 11; Reed v. Ford (Ky.), 112 S. W. 600;
Brownback v. Frailey, 78 Ill. App. 262; 1 Cooley on
Torts (3 Ed.), 94, 95, 96, 97, 98. This doctrine is no
doubt correct enough with respect to those cases where
the injury is inflicted under circumstances apart from a
trespass or other legal wrong against the person or pos-
sessions of the plaintiff. But it seems the rule of ordi-
nary care should find no application to a case where it
appears the fright is occasioned as a result of a tres-
pass against the person of the plaintiff such as an as-
sault on her, as in Barbee v. Reese, 60 Miss. 906; Mann
Boudoir Car Co. v. Dupre, 54 Fed. 646, 21 L. R. A.
289; Hickey v. Welch, 91 Mo. App. 4; nor where the
fright is the result of a trespass against the home or
possession of the plaintiff and engaging in an encounter
with a third party therein, as in Watson v. Dilts, 116
Ia. 249; Lesch v. Great Northern, etc., Ry. Co., 93 Minn.
435; Mann Boudoir Car Co. v. Dupre, 54 Fed. 646, 21
L. R. A. 289. Indeed, it is said in some cases where it
appears there is a legal wrong against the right of the
plaintiff, such as negligence, a recovery may be had for

physical injuries resulting from fright even though the sick or enfeebled condition of plaintiff was wholly unknown to the wrongdoer. [Purcell v. St. Paul City Ry. Co., 48 Minn. 134; Sanderson v. Northern Pac. Ry. Co., 88 Minn. 162; 1 Cooley on Torts (3 Ed.), 97.]

When the injury results from a trespass, as in this case, the trespasser will be required to respond for all consequences which are the natural and probable result of the act complained of in the circumstances of the particular case, and it is not essential that the wrong doer may be able to anticipate who the particular sufferer may be. [1 Sutherland on Damages (3 Ed.), sec. 25.] In other words, when the defendant is a trespasser, either against the person or the apartment of the plaintiff, it is not essential to the cause of action that he should know her condition to the end of conducting himself in accordance with the requirements of ordinary care for her safety. [Watson v. Dilts, 116 Ia. 249; Mann Boudoir Car Co. v. Dupre, 54 Fed. 646, 21 L. R. A. 289.]

It is true in this case the nurse disclosed to defendant's agent at once that plaintiff was sick in the house and of that matter full notice was given, but the fact that she was confined to her bed because of pregnancy was not communicated. Be this as it may, it is entirely clear defendant is not to escape responsibility on this score, for as a trespasser in her home it should respond for all consequences traceable to its wrong as the proximate cause thereof. In cases of affirmative wrong, damages are not remote, as distinguishable from proximate, when they are directly traceable to the wrongful act of the tortfeasor. In other words, the privacy of a home enjoys the sanctity of the law. A trespasser must anticipate that persons may be there sick or in a delicate state of health and liable to suffer injury from gross misconduct on his part. [Watson v. Dilts, 116 Ia. 249; 1 Cooley on Torts (3 Ed.), 99 to 106.]

It is conceded by defendant that the agent complained of was its representative and it appears he was then engaged in defendant's service in the line of his duty in so far as attempting to obtain an entrance to the gas meter was concerned. But it is argued that for the time being the agent overstepped his authority and entered into a controversy on his own account with plaintiff's nurse. The rule is, that if it appears the agent is authorized to do the act, the master is liable for the consequences of his doing it in a different manner, if the mode adopted by him is so far incident to the employment that it comes within its scope, for, having given the agent authority to go about in reading its gas meters, the master must respond for the manner in which he abuses it. In order to render the master liable for the wrongful act of the agent, it is not essential that he be especially authorized or that the particular act complained of shall be necessary to the performance of his duties. It will be sufficient if it appears that the agent was acting in the course of his employment, although outside of the master's instructions. The agent in this case was clearly acting in the line of his duty for defendant and although he resorted to a method or manner of serving his master not authorized, defendant is bound to answer for his conduct in the premises. For the general doctrine, see Garretzen v. Duenckel, 50 Mo. 104, 112, 11 Am. Rep. 405; Shamp v. Lambert, 142 Mo. App. 567, 121 S. W. 770; Voegeli v. Pickel Marble, etc., Co., 49 Mo. App. 643; Chandler v. Gloyd, 217 Mo. 394, 413, 116 S. W. 1073. For an authority directly in point as to a wilful wrong committed by the servant while executing the employment assigned, even in an unlawful manner and beyond its implied obligation, see Haehl v. Wabash R. Co., 119 Mo. 325, 24 S. W. 737. In that case defendant's servant was a watchman engaged on the Wabash railroad bridge across the Missouri river at St. Charles. Plaintiff's husband, a pedestrian, was in the act of crossing defendant's bridge and its watch-

man in the execution of his duty forbade him to further proceed. Some controversy in words evidently ensued and the pedestrian retraced his steps as though he were leaving the bridge in the direction from whence he came. Defendant's watchman followed and, it is said, wrongfully shot plaintiff's husband in the back, so that death resulted. At the suit of the widow of deceased against the railroad company, under our statute giving an action for the wrongful death of a husband, the Supreme Court declared even though the wrongful act of the watchman was willful and involved an affirmative violation of the law on his part, it was one for which the defendant should respond, as the act was performed in executing the duty assigned the watchman by his master, though it was beyond the implied duty of the employment as a watchman. The case extends the principle of *respondeat superior* even beyond the point essential to sustain the defendant's liability to respond on account of the act of its servant involved here, for there it seems the watchman had sufficiently performed his duty by causing the pedestrian to retrace his steps without following after, while in this case, the servant committed the entire trespass while insisting upon his right to pass through plaintiff's apartment to the end of reading the meter. Aside from the reprehensible and unlawful conduct of the servant, this was the execution of the very act defendant had employed him for and bade him to do. Having delegated authority to its servant to perform the act of reading meters, defendant must respond for the mode and manner in which he performed it even though it be both willful and unlawful.

The judgment should be reversed and the cause remanded. It is so ordered. All concur.