ESTELLE KIRBY v. JULES CHAIN STORES CORPORATION ET AL.

(Filed 16 December, 1936.)

1. **Trespass A e—Fright caused by wrongful act is actionable when it results in physical injury, although act does not amount to forcible trespass.**

   The evidence favorable to plaintiff tended to show that defendant's bill collector, in attempting to collect a past-due account from plaintiff, sat in his car at the curb opposite plaintiff's home and shouted abusive language at plaintiff, and threatened to get the sheriff to arrest plaintiff; that plaintiff was far advanced in pregnancy, which fact was known to defendant's agent, and that the fright caused by the collector's language and threats resulted in the premature stillbirth of plaintiff's child. *Held:* Although fright alone is not actionable, when fright directly causes physical injury and arises out of a wrongful act of defendant, it is sufficient to constitute a cause of action for trespass to the person, which lies for physical injury to the person either negligently or willfully inflicted, and defendant's demurrer to the complaint alleging facts supported by plaintiff's evidence was properly overruled.

2. **Appeal and Error J a—**

   The verdict of the jury upon conflicting evidence is conclusive on appeal.

APPEAL by defendants from *Shaw, Emergency Judge,* at March Special Term, 1936, of MECKLENBURG.

Civil action for willful trespass to the person.

Plaintiff purchased a dress and a hat from the corporate defendant in the summer of 1933, to be paid for on the installment plan. The account originally amounted to $13.98 or $14.98, but had been reduced by some payments.

On 5 July, 1934, S. M. Russell, collecting agent of the corporate defendant, went to the home of the plaintiff, who was living with her parents at the time, and asked if she had anything to pay on her account. Plaintiff replied that she did not, as she was then not able to work, being in her seventh month of pregnancy, but that she would pay as soon as she could. Russell, without getting out of his automobile, which was about fifteen feet from the plaintiff, is alleged to have retorted: "By G——, you are like all the rest of the damn deadbeats. . You wouldn't pay when you could. . . . If you are so damn low you won't pay, I guess when I get the sheriff and bring him down here you will pay then."

Plaintiff testifies: "He said he was going right then and send the sheriff after me, and scared me to death. He said, By G——, he was going to bring the sheriff down there and arrest me, said guess I'd pay then. . . . He called me a deadbeat. . . . He repeated it three or four times, and, as he drove off, that is what he said. . . . He didn't get out of the car, he just hollered at me."

About two weeks prior to this, plaintiff's father had ordered the defendant Russell, who was then trying to collect on the account, to leave the premises because of plaintiff's condition, and Russell's profanity and apparent anger. On the occasion in question, the plaintiff, her mother, and sister were the only persons in the house. "There were no men folks at home."

Continuing, plaintiff says: "Then I took sick in about two hours after he left, real sick. . . . I had been feeling good up to that time. . . . From that time on, I was in pain, and on the following Wednesday night my child was prematurely born. It was dead."

Dr. G. W. Black testifies that in his opinion the fright occasioned by the conduct of the defendant Russell could have produced the premature birth of plaintiff's child.

There was denial of the plaintiff's testimony by the defendant Russell; and Dr. Nance, who attended the plaintiff at the birth of her child on 12 July, 1934, testifies: "I have an opinion satisfactory to myself. . . . The baby appeared to be fully developed. . . . Birth apparently not premature. . . . It was a breach presentation. . . . Death due to contraction of cervix around baby's neck. . . . Nothing to indicate a miscarriage."

The jury answered the issue of liability in favor of the plaintiff, and assessed her damages at $1,000. From judgment thereon, the defendants appeal, assigning errors.

*Carswell & Ervin for plaintiff, appellee.*

*Tillett, Tillett & Kennedy and John A. Kleemeier, Jr., for defendants, appellants.*

STACY, C. J., after stating the case: At the outstart of the argument in this Court, the defendants interposed a demurrer to the complaint on the ground that it does not state facts sufficient to constitute a cause of action. This must be overruled. The case is controlled by the principles announced in *Freeman v. Acceptance Corporation,* 205 N. C., 257, 171 N. C., 63; *Beasley v. Byrum,* 163 N. C., 3, 79 S. E., 270; *May v. Tel. Co.,* 157 N. C., 416, 72 S. E., 1057; *Arthur v. Henry, ibid.,* 438, 73 S. E., 211; *Kimberly v. Howland,* 143 N. C., 398, 55 S. E., 778; *Watkins v. Mfg. Co.,* 131 N. C., 536, 42 S. E., 983, rather than by the decision in *Anthony v. Protective Union,* 206 N. C., 7, 173 S. E., 6, or the holding in *Kaylor v. Sain,* 207 N. C., 312, 176 S. E., 560.

The gravamen of plaintiff's cause of action is trespass to the person. *Duncan v. Stalcup,* 18 N. C., 440; 63 C. J., 891. This may result from an injury either willfully or negligently inflicted. *May v. Tel. Co., supra.*

The leading case on the subject is *Hill v. Kimball,* 76 Tex., 210, 13 S. W., 59, 7 L. R. A., 619, where the petition was held to be good as against a demurrer, which contained averments to the effect that plaintiffs were husband and wife, in possession of a dwelling house as tenants of defendant, that the *feme* plaintiff was well advanced in pregnancy, which fact was known to the defendant, who also knew the probable effects upon *feme* plaintiff of any undue excitement, that defendant came to the premises and in the immediate presence of *feme* plaintiff assaulted two Negroes in a boisterous and violent manner, which assault was accompanied with profane language and resulted in drawing blood, and that, as a consequence, *feme* plaintiff was greatly frightened, which brought on pains of labor, and eventually produced a miscarriage, and otherwise seriously impaired her health.

In holding that the plaintiffs could recover, the Court said: "That a physical personal injury may be produced through a strong emotion of the mind there can be no doubt. The fact that it is more difficult to produce such an injury through the operation of the mind than by direct physical means affords no sufficient ground for refusing compensation, in an action at law, when the injury is intentionally or negligently inflicted. It may be more difficult to prove the connection between the alleged cause and the injury, but if it be proved, and the injury be the proximate result of the cause, we cannot say 'that a recovery should not be had. Probably an action will not lie when there is no injury except the suffering of the fright itself, but such is not the present case. Here,

according to the allegations in the petition, the defendant has produced a bodily injury by means of that emotion, and it is for that injury that the recovery is sought."

Likewise, in *Engle v. Simmons,* 148 Ala., 92, 41 So., 1023, which was an action "for an injury to the plaintiff," it was held (as stated in the second headnote) : "A man entered the dwelling house occupied by a married woman, far advanced in pregnancy, and after being informed that the husband was absent, and after being requested to leave the house, he refused to do so, took an inventory of the household effects, and made threats in reference as to what he would do in reference to a collection of a debt against the husband. The woman was thrown in a nervous excitement, and labor pains, resulting in the premature birth of a child, were brought on. Held, the person entering the house was liable for the bodily pain the woman suffered, though he inflicted no physical violence."

In commenting on the fact that physical violence to the person was not necessary to make out the case, the Court said : "The plaintiff here was in her home, and had a right to the peaceful and undisturbed enjoyment of the same, and any unlawful entry or invasion thereof, which produced physical injury to her, whether by direct personal violence or through nervous excitement the proximate result of the wrongful acts of the defendant, was a wrong for which she is entitled to recover."

Again, in *Purcell v. R. R.,* 48 Minn., 134, 16 L. R. A., 203, the plaintiff, a pregnant woman, was frightened by the negligent conduct of the defendant in running its cars, miscarried, and suffered permanent injury : Held, that a cause of action would lie. Compare *Nelson v. Crawford,* 122 Mich., 466, 81 N. W., 335, 80 Am. St. Rep., 577.

The doctrine of *Hill v. Kimball, supra,* has not been universally followed. *Nelson v. Crawford, supra;* 17 C. J., 834. The rationale of the North Carolina decisions, however, places this State in line with it. In addition to the cases cited above, see *Blow v. Joyner,* 156 N. C., 140, 72 S. E., 319; *Brame v. Clark,* 148 N. C., 364, 62 S. E., 418; *Stewart v. Lbr. Co.,* 146 N. C., 47, 59 S. E., 545; *Hatchell v. Kimbrough,* 49 N. C., 163; *McClees v. Sikes,* 46 N. C., 310; *Loubz v. Hafner,* 12 N. C., 185; *S. v. Hinson,* 83 N. C., 640; *S. v. Tolever,* 27 N. C., 452. The authorities are assembled and digested in annotations, 11 A. L. R., 1119, and 32 A. L. R., 921.

Animadverting on the situation and distinguishing the cases in *Bouillon v. Gas Light Co.,* 148 Mo. App., 462, 129 S. W., 401, *Nortoni, J.,* delivering the opinion of the Court, said : "There are cases which go to the effect that before plaintiff may recover as for a miscarriage caused by fright it must appear the defendant was aware of her condition and notwithstanding such knowledge occasioned the fright by entering into

an altercation in her presence. These authorities proceed as though no obligation rests upon defendant to respond except it appear he breached the obligation to exercise ordinary care. That is to say, they proceed as though no damages may be recovered unless it appear that defendant was in a position to anticipate the particular result as a probable sequence of the fright. See *Phillips v. Dickerson,* 85 Ill., 11; *Reed v. Ford* (Ky.), 112 S. W., 600; *Brownback v. Frailey,* 78 Ill. App., 262; 1 Cooley on Torts (3 Ed.), 94, 95, 96, 97, 98. This doctrine is no doubt correct enough with respect to those cases where the injury is inflicted under circumstances apart from a trespass or other legal wrong against the person or possessions of the plaintiff. But it seems the rule of ordinary care should find no application to a case where it appears the fright is occasioned as a result of a trespass against the person of the plaintiff, such as an assault on her, as in *Barbee v. Reese,* 60 Miss., 906; *Mann Boudoir Car Co. v. Dupre,* 54 Fed., 646, 21 L. R. A., 289; *Hickey v. Welch,* 91 Mo. App., 4; nor where the fright is the result of a trespass against the home or possession of the plaintiff and engaging in an encounter with a third party therein, as in *Watson v. Dilts,* 116 Ia., 249; *Lesch v. Great Northern Ry. Co.,* 93 Minn., 435; *Mann Boudoir Car Co. v. Dupre,* 54 Fed., 646, 21 L. R. A., 289. Indeed, it is said in some cases where it appears there is a legal wrong against the right of the plaintiff, such as negligence, a recovery may be had for physical injuries resulting from fright even though the sick or enfeebled condition of plaintiff was wholly unknown to the wrongdoer. (*Purcell v. St. Paul City Ry. Co.,* 48 Minn., 134; *Sanderson v. Northern Pac. Ry. Co.,* 88 Minn., 162; 1 Cooley on Torts [3 Ed.], 97.)"

It is true, the basis of the action in most of the cases has been forcible trespass, and it is contended that in the case at bar no forcible trespass has been shown, hence no liability exists. Without conceding the correctness of the syllogism as applied to the instant case, it is observed that much of the confusion on the subject seems to have come from worshipping at the shrine of words and formulas, rather than applying correct principles to the facts in hand. *Gulf, etc., Ry. Co. v. Hayter,* 93 Texas, 239, 77 Am. St. Rep., 856, and note. It is no doubt correct to say that fright alone is not actionable, *Arthur v. Henry, supra,* but it is faulty pathology to assume that nervous disorders of serious proportions may not flow from fear or fright. *Hickey v. Welch,* 91 Mo. App., 4; 17 C. J., 838. Fear long continued wears away one's reserve.

"As a general rule, damages for mere fright are not recoverable; but they may be recovered where there is some physical injury attending the cause of the fright, or, in the absence of physical injury, where the fright is of such character as to produce some physical or mental impair-

ment directly and naturally resulting from the wrongful act"—*Sutton, J.*, in *Candler v. Smith,* 50 Ga. App., 667, 179 S. E., 395.

If it be actionable willfully or negligently to frighten a team by blowing a whistle, *Stewart v. Lumber Co., supra,* or by beating a drum, *Loubz v. Hafner, supra,* thereby causing a run-away and consequent damage, it is not perceived upon what logical basis of distinction the present action can be dismissed as in case of nonsuit. *Arthur v. Henry, supra.*

While it would seem the jury might well have answered the issues in favor of the defendant, especially in view of Dr. Nance's testimony, still there is evidence to the contrary, and the matter was for the twelve.

No reversible error having been made to appear, the verdict and judgment will be upheld.

No error.